


U.S. Department of Justice

United States Attorney
Eastern District of New York

DCP:SCJ
F. #2017R01691

271 Cadman Plaza East
Brooklyn, New York 11201

November 24, 2019

By Hand and ECF

The Honorable Margo E. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:     United States v. Iskyo Aronov
                 Criminal Docket No. 19-408 (MKB)

Dear Judge Brodie:

        Pursuant to its obligations under United States v. Curcio, 680 F.2d 881 (2d Cir. 1982) and its progeny, the United States Attorney's Office for the Eastern District of New York (the "Office") respectfully submits this letter to notify the Court regarding potential conflicts of interest involving defense counsel Kevin Keating, Esq., who filed a notice of appearance on November 4, 2019 for the defendant Iskyo Aronov in the above-referenced case.  Specifically, as described in more detail below, prior to his retention by Aronov, Keating was consulted by co-defendant Tomer Dafna about potentially representing Dafna in this case.   In addition, between August 2011 and the present, Keating has represented a defendant in an unrelated case ("Individual-1"), who is not charged in this case but appears to have a connection to the charged scheme.[1]

        Accordingly, for the reasons set forth below, the Office respectfully requests that the Court determine whether the potential conflicts are waivable, and, if it decides that they are, that the Court: (1) appoint Curcio counsel ("Curcio Counsel") for Aronov; (2) allow Curcio Counsel adequate time to consult with Aronov; and (3) conduct a Curcio hearing to determine whether Aronov is willing to waive any conflicts of interest that may arise from Keating's prior potential representation of Dafna and the on-going representation of Individual-1.

---

[1] The government has discussed Individual-1 with Keating, who is aware of Individual 1's identity.

BACKGROUND

I. The Instant Case

On September 6, 2019, a grand jury in the Eastern District of New York returned an indictment that charged Aronov, Dafna, Michael Konstantinovskiy, Avraham Tarshish and Michael Herskowitz with participating in a conspiracy to commit wire and bank fraud and substantive wire fraud, in violation of Title 18, United States Code, Sections 1349 and 1343.  The charges arose out of the defendants' roles in a short sale mortgage fraud scheme, as described in the Indictment.  The next status conference for all defendants is scheduled for December 3, 2019 at 10:00 am.

II. Keating's Prior Potential Representation of Dafna

At Dafna's initial arraignment on the Indictment on September 10, 2019, Dafna had not yet retained counsel and was represented by appointed CJA counsel Paula Notari.  Dafna did not present a bail application and was ordered detained.  Between September 10, 2019 and September 13, 2019, a number of attorneys, including Joseph Conway and Keating, separately contacted the government, each indicating that he might be retained by Dafna.  On September 13, 2019, Conway filed a notice of appearance on behalf of Dafna.  Dafna was released on bond on September 24, 2019.  Conway represented Dafna between September 13, 2019 and October 18, 2019.  Dafna recently retained Alan Futerfas, who filed his notice of appearance on behalf of Dafna on October 18, 2019.

On November 4, 2019, Keating filed a notice of appearance on behalf of Aronov, replacing Aronov's retained attorneys from Dechart LLP, including Michael Gilbert, David Kelley, and Matthew McDonagh.  On November 15, 2019, Stefani Goldin also filed a notice of appearance on behalf of Aronov.  Keating, Goldin, as well as attorney Josef Timlichman, who has not filed a notice of appearance in this case but represented Aronov at his initial appearance in Florida, all appear to be working together to represent Aronov.

On November 15, 2019, the government and Keating discussed whether Keating had engaged in any substantive discussions with Dafna about this case that might necessitate a Curcio hearing.  Keating replied that no such substantive communications took place, but, at some point after Dafna was released on bond, Keating met briefly with Dafna and Dafna's wife at their home, and discussed Dafna's bail conditions and his representation.  At that meeting, Keating learned that Dafna was also interviewing other lawyers.  In a subsequent communication with the government, Keating confirmed that the date of that meeting at Dafna's home was September 29, 2019, and it lasted approximately 30 minutes.

III. Keating's Representation of Individual-1

Since approximately, mid-2011, Keating also has represented Individual-1 in a criminal prosecution in the Eastern District of New York.  Individual-1 was charged with

2

participating in an unrelated mortgage fraud scheme predating the charged scheme. Individual-1 pleaded guilty and was subsequently sentenced to a term of imprisonment

As noted in the Indictment, the co-conspirators in the short sale scheme (the "Short Sale Scheme") used short sale processing companies that purported to represent distressed home owners in negotiations with their mortgage lenders. Ind. ¶¶ 2, 7, 21. NHA and Settle NY Corp. were short sale processing companies controlled by co-defendant Konstantinovskiy, a co-conspirator in the charged Short Sale Scheme. Id. While Aronov primarily used NHA and Settle NY Corp. to process short sale transactions that originated at My Ideal Property, those entities were not the only short sale processors used by the Short Sale Co-Conspirators to negotiate short sales with lenders. Id. Individual-1 appears to have been connected to an entity that processed a number of short sales for Dafna and Tarshish, including one of the short sales described in the Indictment and also charged as part of Count Six, a substantive wire fraud charge against Aronov, Dafna, Tarshish and Herskowitz. Ind. ¶¶ 31, 42. Individual-1 was copied on certain e-mails that related to the short sale of that property. It also appears that the short sale processing company connected to Individual-1 may have been paid fees in connection with this short sale and others that were not disclosed to the lender. Even if Individual-1 is not charged in the instant case, he likely has relevant information about the defendants, including Dafna, Tarshish and Aronov.

## DISCUSSION

I.  Applicable Law

    A.  Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the

3

defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

### 1. Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). As described more fully below, the Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

### 2. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

### 3. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., United States v. Malpiedi, 62 F.3d 465, 470 (2d Cir. 1995).; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

4

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." United States v. Stantini, 85 F.3d 9, 15 (2d Cir. 1996). Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

    B.    Relevant Conflicts

        1.    Representation of a Co-Conspirator or Government Witness

An attorney's representation of a co-conspirator or a potential government witness presents an inherent conflict of interest. A serious conflict may also arise if the defendant wished to cooperate with the government's investigation and testify as to facts inculpating the other client. See Locascio, 6 F.3d at 931; United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295. Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm. E.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).

That means that, in representing a current client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d

5

40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a current client, a lawyer may not attack other clients through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently").

       The duty of loyalty to his other client thus effectively precludes a lawyer from vigorously cross-examining the other client or commenting on his credibility, which may be essential to the effective representation of the present client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests" — a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); Malpiedi, 62 F.3d at 469 (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

       Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts arising from his attorney's prior representation of a co-conspirator or government witness. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

    C.    Cumulative Prejudice

       Further, in cases where more than one conflict has been raised, "each cannot be considered in isolation, but rather must be considered together when assessing whether

6

there is a congruence of interests between the lawyer and his client." United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); see also Levy, 25 F.3d at 157.

II.     Analysis

The Office respectfully submits that Curcio Counsel should be appointed for Aronov and a Curcio hearing is necessary to ensure that Aronov understands the potential or actual conflicts arising from Keating's meeting with Dafna and his representation of Individual-1 and that Aronov is willing to waive those conflicts.

Here, the government has identified at least two areas of conflicts or potential conflicts that would have to be waived by Aronov. First, because Keating met with Dafna, Dafna may assert that anything discussed with Keating at that meeting is covered by the attorney-client privilege, despite the presence of Dafna's wife at the meeting, and Keating would be precluded from using any information that he learned from Dafna to assist Aronov in his case.

Second, because Keating has represented Individual-1 in an unrelated matter, including during the same time period that Individual-1 may have been involved in facilitating short sale transactions within the scope of the charged Short Sale Scheme with certain Short Sale Co-Conspirators, Keating owes a duty of loyalty to both Individual-1 and Aronov that may result in him making decisions, consciously or unconsciously, with an eye to how such decisions might affect one client at the expense of another. While the government cannot predict all the possible areas of conflict that may arise, if, for example, Aronov proceeded to trial and Individual-1 was called as a witness by any party and provided damaging information about Aronov, then Keating would have an actual conflict as he would be unable to challenge Individual-1's credibility based on anything he learned during his lengthy representation of Individual-1.

While the Court may determine that these potential conflicts can be waived by Aronov after a Curcio hearing, see, e.g., United States v. Tavarez, 41 F. App'x 489, 491-92 (2d Cir. 2002), the Office requests that the Court: (1) appoint Curcio Counsel for Aronov; (2) allow Curcio Counsel adequate time to consult with Aronov; and (3) conduct a Curcio hearing to determine whether Aronov is willing to waive any conflicts of interest described above.

III.    Proposed Questions

In the event the Court determines that the defendant can waive the potential conflicts of interest, the government proposes that the Court advise the defendant as follows:

> I am advised that your attorney has previously consulted with one individual, Tomer Dafna, and currently represents another individual, Individual-1, that the government has either charged or identified as a potential coconspirator or witness. Your

7

attorney has certain ethical obligations to these other individuals.  For example, it might be a conflict of interest for your attorney to investigate leads, introduce evidence or make arguments on your behalf that might tend to incriminate or cast suspicion on Individual-1.

Your attorney also may have privileged information from Tomer Dafna or Individual-1 that could assist in your defense but that he could not disclose because of his ethical duties.  It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crime charged against you or your relationship with your coconspirators, whereas your attorney may be ethically barred from pursuing such a defense strategy due to contrary information he may have obtained from these other individuals.

There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact he has consulted with Tomer Dafna in matters related to this case or represented Individual-1 in an unrelated case.  No one can foresee every possible conflict of interest.

Do you have any questions about what I have just explained to you?  Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations.  If you proceed with your attorney, you will be giving up that right.  Do you understand that?

Have you discussed these issues with your attorney?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your attorney.  Do you understand that?

You are not under any pressure to make a decision about this right now.  You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.

CONCLUSION

For the foregoing reasons, the Court should notify the defendant of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise the defendant regarding his right to conflict-free representation and determine if he can waive those rights.

                Respectfully submitted,

                RICHARD P. DONOGHUE
                United States Attorney

By:   /s/
                Shannon C. Jones
                Assistant U.S. Attorney
                (718) 254-6379

cc:     Kevin Keating, Esq. (By email)