UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

     -   against   -                 **MEMORANDUM & ORDER**
                                                 19-CR-408 (MKB)

ISKYO ARONOV, MICHAEL
KONSTANTINOVSKIY,
TOMER DAFNA,
AVRAHAM TARSHISH, and
MICHAEL HERSKOWITZ,

                         Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

         On April 29, 2019, a grand jury returned an indictment against Defendants Michael

Konstantinovskiy, Iskyo Aronov, Avraham Tarshish, Tomer Dafna, and Michael Herskowitz

charging them with conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §§ 1349

and 3551 *et seq*. ("Counts One and Two"), and substantive counts of wire fraud related to

specific transactions in violation of 18 U.S.C. §§ 1343, 2, and 3551 *et seq*. ("Counts Three

through Seven").[1] (Indictment ("Ind.") ¶¶ 36–42, Docket Entry No. 1; Grand Jury Investigation

Covering Mem., annexed to Ind. as Ex. 3, Docket Entry No. 1-3.) The Indictment alleges that

Defendants engaged in conspiracies to defraud lenders and certain borrowers (collectively, the

"Short Sale Victims") by providing them with false, misleading, and incomplete information to

induce them to execute short sales at fraudulently depressed prices, causing losses to the lenders

and, at times, the borrowers (the "Short Sale Schemes"). (Ind. ¶ 18.)

---

[1] The Indictment was unsealed by court order on September 12, 2019. (Order dated
Sept. 12, 2019.)

Defendants move pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure for an order compelling the Government to provide a bill of particulars,[2] (Defs.' Mot. for Bill of Particulars ("Defs.' Mot."), Docket Entry No. 118; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 173), and the Government opposes the motion, (Gov't Opp'n, Docket Entry No. 172).  For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## I.  Background

### a.  The Indictment

The thirty-three-page Indictment alleges that from in or about December of 2012 to January of 2019, Defendants "worked both together and separately to purchase hundreds of properties at fraudulently depressed prices and then resell or 'flip' the properties for large profits."  (Ind. ¶ 18.)  The Indictment also alleges that the Short Sale Schemes "originated at [My Ideal Property ('MIP')] under the direction of [Aronov] with the assistance of [Konstantinovskiy and Tarshish], Short-Sale Co-Conspirators 1, 2 and 3, and others" (the "MIP Scheme") and that the scheme was later replicated by Tarshish and Dafna "at Exclusive Homes with the assistance of Short-Sale Co-Conspirator 2 and others" (the "Exclusive Homes Scheme").  (*Id.* ¶ 19.)  It further alleges that Herskowitz — a real estate attorney — "assisted the Short-Sale Co-Conspirators in completing certain fraudulent short sale transactions originated by both MIP and Exclusive Homes."  (*Id.*)

The Indictment provides a detailed overview of the schemes.  (*See id.* ¶¶ 18–25.)  It contends that Defendants "primarily targeted borrowers who owned homes in Brooklyn and

---

[2]  Counsel for Konstantinovskiy submits the motion on his behalf and behalf of all other Defendants.  (Defs.' Mot. 3 n.1.)

Queens, New York, and who were in default on their mortgage loans and in foreclosure proceedings," and attempted to "persuade the borrowers to sell their homes to the Short Sale Co-Conspirators in short sale transactions," by offering borrowers payment in exchange for signing: "(a) an agreement with a real estate broker to list the property for sale; (b) an authorization to allow a third-party negotiator to negotiate the short sale with the lender on the borrower's behalf; and (c) a contract to sell the property to a corporate entity controlled by the Short Sale Co-Conspirators." (*Id.* ¶ 20.) After entering into an agreement with a borrower, the Short Sale Co-Conspirators "worked together to ensure that [they] purchased the property for the lowest price that the lender or servicer would accept," (*id.* ¶ 21), by providing "false, misleading, and incomplete information to the lender or loan servicer," (Gov't Opp'n 2). The Indictment details seven "select transactions" that were executed by Defendants and the Short Sale Co-Conspirators as part of the schemes, involving properties located at: 175 Vernon Avenue, Brooklyn, New York; 1219 Jefferson Avenue, Brooklyn, New York; 1319 Jefferson Avenue, Brooklyn, New York; 1055 Herkimer Street, Brooklyn, New York; 177 Lewis Avenue, Brooklyn, New York; 2403 Dean Street, Brooklyn, New York; and 65 Glen Street, Brooklyn, New York. (Ind. ¶¶ 27–33.) For each of these properties, the Indictment details "the alleged fraudulent nature of . . . [the] transaction and the identity of the particular [D]efendants involved." (Gov't Opp'n 3.) The Indictment also provides examples of "specific misrepresentations within the short sale transaction documents" surrounding the sale of 175 Vernon Avenue, Brooklyn, New York. (*Id.* (citing Ind. ¶ 27).)

> **b.  Defendants' application for a bill of particulars**

Defendants seek a bill of particulars as "necessary to allow [D]efendants to prepare for trial and prevent unfair surprise." (Defs.' Mot. 10.) With respect to Counts One and Two,

Defendants seek the disclosure of: (1) each short sale transaction alleged to be part of the MIP and Exclusive Homes Schemes; (2) "as to each short sale transaction, the alleged misrepresentation(s) made[,] and the document(s) in which they appear"; (3) "the alleged victim of each short sale transaction"; (3) the identity of "the co-conspirators who allegedly participated in each short sale transaction"; and (4) the "loss[] that allegedly resulted from each such transaction." (*Id.* at 8.) With respect to the wire fraud counts alleged in Counts Three through Seven, Defendants seek disclosure of "(1) the alleged misrepresentation(s) made in connection with the identified short sale transaction and the document(s) in which they appear;" and (2) "the alleged victim of each count." (*Id.*)

To the extent the information is not identified through the requests above, Defendants further seek: (1) the identity of "each property which is alleged to be part of the [MIP and Exclusive Homes Schemes]"; (2) "the 'false, misleading and incomplete information' allegedly provided in each transaction 'to induce [the Short Sale Victims] to execute short sales at fraudulently depressed prices,' and "any document(s) in which such information appears"; (3) the identity of "the alleged victim in each such transaction"; (4) the identities of "the co-conspirators who allegedly participated in each transaction"; and (5) "the loss that allegedly resulted from each such transaction, to the extent applicable." (*Id.* at 8–9.)

Finally, Defendants request that the Government be required to specifically identify: (1) "each instance in which the [Short Sale Co-Conspirators] allegedly arranged to damage a property to lower its appraised value," (*id.* at 9 (citing Ind. ¶ 21)); (2) "each instance in which a borrower was allegedly misled regarding the nature of a deed transfer," (*id.* (citing Ind. ¶ 22)); and (3) "the fraudulent UCC-1 Financing Statements," including "the allegedly false information in each document," (*id.* (citing Ind. ¶ 23)).

## II.   Discussion

For the reasons stated below, the Court finds that Defendants are entitled to a bill of particulars as to the transactions alleged to comprise the MIP and Exclusive Homes Schemes as well as the identities of the known unindicted Short Sale Co-Conspirators.  With respect to the remaining requests, the Court denies the motions because the Indictment provides sufficient detail to allow Defendants to prepare for trial and to prevent surprise.

Federal district courts have authority to "direct the government to file a bill of particulars."  Fed. R. Crim. P. 7(f).  "A bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'"  *United States v. Chen*, 378 F.3d 151, 163 (2d. Cir. 2004) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).  "Moreover, 'a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.'"  *Id.* (quoting *Walsh*, 194 F.3d at 47); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam) ("Generally, if the information sought by [the] defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." (first citing *United States v. Matlock*, 675 F.2d 981, 986 (8th Cir. 1982); and then citing *United States v. Soc'y of Indep. Gasoline Marketers*, 624 F.2d 461, 466 (4th Cir. 1979))); *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990) ("The important question is whether the information sought is necessary, not whether it is helpful." (first citing *United States v. Guerrerio*, 670 F. Supp. 1215, 1224 (S.D.N.Y. 1987); and then citing *United States v. Payden*, 613 F. Supp. 800, 816–18 (S.D.N.Y. 1985))).  "Whether to grant a bill of particulars rests within the sound discretion of the district court."  *United States v. Schlesinger*, 261 F. App'x 355, 359 (2d Cir. 2008) (quoting *United States v. Panza*, 750 F.2d 1141, 1148 (2d

Cir. 1984)).  "When exercising this discretion, a court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery, and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted."  *United States v. Burstein*, No. 10-CR-623, 2012 WL 12929661, at \*4 (E.D.N.Y. June 14, 2012) (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001)), *aff'd sub nom. United States v. Rabinowitz*, 645 F. App'x 63 (2d Cir. 2016).

Where an indictment charges an alleged conspiracy, the government is not required to specify each overt act taken in furtherance of the conspiracy.  *United States v. Jain*, No. 98-CR-1238, 2019 WL 6888635, at \*1 (S.D.N.Y. Dec. 18, 2019) (first citing *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989); and then citing *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993)); *see also Jimenez*, 824 F. Supp. at 363 ("[D]isclosure of all the overt acts in furtherance of the conspiracy is not properly the function of a bill of particulars." (citation omitted)); *Feola*, 651 F. Supp. at 1132 ("It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the [g]overnment intends to adduce to prove their criminal acts." (first citing *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975)); then citing *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985); and then citing *United States v. Politi*, 334 F. Supp. 1318, 1321 (S.D.N.Y. 1971), *aff'd* 516 F.2d 897 (2d Cir. 1975) (mem.))).

      **a.   Transactions alleged to be part of the MIP and Exclusive Homes Schemes**

Defendants argue that "[w]ithout adequate notice of the transactions that each [D]efendant must defend against at trial, defense counsel will have to sift through the mountains of discovery to try to guess which transactions the [G]overnment will allege were criminal,"

which "[a]t best, . . . would be a waste of [Defendants'] time and resources; more likely, given the volume of discovery, it would prove impossible." (Defs.' Mot. 11.) In support, Defendants argue that "the discovery contains bank records and property loan files for more than 350 real estate transactions," and that "[e]ven assuming the [G]overnment narrows the list of transactions down from 350, reviewing some subset of transactions for this information would require [D]efendants to sort through hundreds or even thousands of pages of discovery per property." (*Id.*)

The Government contends that "[g]iven the length and detail of the Indictment, coupled with the accessibility of the produced documents and the other information available to the [D]efendants, the mere fact that discovery is voluminous is not a basis for granting the [m]otion." (Gov't Opp'n 13.) In support, the Government argues that the case is distinguishable from *Bortnovsky*, where the Second Circuit found that the district court erred in denying the defendant's motion for a bill of particulars as "the indictment was vague, defense counsel had very limited time to prepare for trial, and prior to and even during the trial it was unclear which [insurance transactions] introduced into evidence were alleged to be fake." (*Id.* (citing *Bortnovsky*, 820 F.2d at 574–75).) By contrast, the Government contends that given the "length and detail" of the Indictment, which "includes seven example short sale transactions," in addition to the "Civil Complaint[3] [which] contains nine additional example short sale transactions that were part of the MIP scheme," a bill of particulars is not necessary to allow Defendants to prepare adequately for trial. (*Id.* at 13, 15–16.) In addition, the Government argues that the volume of discovery does not justify Defendants' request, as Defendants have a "substantial

---

[3] The MIP Scheme was also described in the Complaint-In-Intervention filed by the Civil Division of the U.S. Attorney's Office (the "Civil Complaint") and unsealed on January 4, 2021. *United States v. Aronov*, No. 16-CV-4853, Docket Entry No. 15 (filed Jan. 4, 2021).

amount of time to digest [the] discovery" and "the [G]overnment intends to mark its trial exhibits and make them available to defense counsel [thirty] days prior to trial so the [D]efendants will have advance notice as to what documents and short sale transactions the [G]overnment plans to introduce at trial." (*Id.* at 14, 16.)  Finally, the Government contends that it has taken steps to facilitate Defendants' review of the discovery materials by "formatt[ing] the large productions as load files that are text searchable[, and] . . . provid[ing] indices or descriptive cover letters for each production[] so that [Defendants] can more efficiently locate documents of interest to them, and determine how they relate to the relevant charges in the Indictment." (*Id.* at 12.)

Where the government alleges a scheme encompassing both legal and illegal transactions, as opposed to a scheme in which most or all activity is alleged to have been illegal, defendants are more likely entitled to a bill of particulars specifying the alleged fraudulent transactions in order to be able to adequately prepare their defense. *See United States v. Tuzman*, 301 F. Supp. 3d 430, 451 (S.D.N.Y. 2017) (finding that in determining whether a bill of particulars is necessary "courts have differentiated between cases in which only isolated illegal activity is alleged, and cases in which most or all activity is alleged to have been illegal"); *United States v. Kahale*, 789 F. Supp. 2d 359, 393 (E.D.N.Y. 2009) (denying request for bill of particulars where "the circumstances [of the instant case stood in contrast to] both *Bortnovsky* and [*United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000)], [which] presented the quintessential 'needle in a haystack' problem to defendants who were faced with sifting through thousands of legitimate transactions in an attempt to discover which transactions the government sought to prove were fraudulent" (citations omitted)); *see also United States v. Savin*, No. 00-CR-45, 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (granting request for bill of particulars where absent more detailed information about the transactions alleged to be part of the conspiracy, the

defendant would be "forced to comb through this veritable mountain of documents and to attempt to guess which of the numerous transactions documented therein, and conducted over a six-year period, are alleged by the government to have been improper"); *Nachamie*, 91 F. Supp. 2d at 571–72 (granting bill of particulars where government had produced "over 200,000 pieces of paper" relating to 2,000 Medicare claims and stated that it would specify which claims were alleged to be false forty-five days before trial).

Defendants are entitled to a bill of particulars with regard to the transactions alleged to be part of the MIP and Exclusive Homes Schemes in Counts One and Two.  The Government has provided details about select transactions alleged to be part of the these schemes both in the Indictment and in the Civil Complaint, but this list does not appear to be exhaustive, as the Indictment alleges that Defendants worked together with the Short Sale Co-Conspirators "to purchase hundreds of properties at fraudulently depressed prices and then resell or 'flip' the properties for large profits."  (Ind. ¶ 18.)  Although the Government intends to "specify the transactions in which each defendant was involved no later than [thirty] days before trial," (Gov't Opp'n 14), given the "hundreds or even thousands of pages of discovery per property," (*see* Defs.' Mot.), without more advance notice, Defendants may not have sufficient time to analyze the material and prepare their defense, (*see id.* at 11); *see also United States v. Vaid*, No. 16-CR-763, 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017) ("In cases involving fraud, courts have required the [g]overnment to specify through a bill of particulars which document or transactions it intends to prove are fraudulent if this information is not ascertainable; otherwise, in effect, 'the burden of proof impermissibly [may] shift[]' to the defendant to prove the documents or transactions are not fraudulent." (second and third alterations in original) (quoting *Bortnovsky*, 820 F.2d at 575)); *United States v. Hawit*, No. 15-CR-252, 2017 WL 663542, at *11

(E.D.N.Y. Feb. 17, 2017) (requiring the government to provide a bill of particulars specifying the transactions that it "will seek to prove were tainted by an unlawful conspiracy of which [the defendant] was a part").

### b. Identity of unindicted Short Sale Co-Conspirators

Konstantinovskiy argues that "[t]he identities of [the Short Sale Co-Conspirators] are particularly important for [him because he] is alleged to have served as a middleman who processed short sales for others" and courts in the Second Circuit have generally granted requests for a bill of particulars "as to the identities of unindicted co-conspirators" under similar facts. (Defs.' Mot. 13 (quoting *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018)).)

The Government contends that it has provided sufficient information for Defendants to prepare for trial as the Indictment "charges five [D]efendants and identifies, by number, three additional Co-Conspirators whose identities are clear from the documents cited in reference to these individuals and produced in discovery," (Gov't Opp'n 17), and the Civil Complaint "charges an additional defendant not named in the Indictment, as well as refers, by number, to nine additional Co-Conspirators . . . and a number of corporate entities." (*Id.*)

In cases alleging conspiracy, the government is not necessarily required to disclose the identity of all co-conspirators. *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (first citing *United States v. Gasperini*, No. 16-CR-441, 2017 WL 2399693, at *12 (E.D.N.Y. June 1, 2017); and then citing *United States v. Follieri*, No. 08-CR-850, 2009 WL 529544, at *1 (S.D.N.Y. Mar. 3, 2009)).  Courts in the Second Circuit disagree regarding at what stage of the proceeding the government must identify known unindicted co-conspirators.  *See United States v. Barrera*, 950 F. Supp. 2d 461, 477 (E.D.N.Y. 2013) ("Courts in this [c]ircuit are

divided on the question of when the [g]overnment should be required to identify alleged co-conspirators in a bill of particulars." (first citing *United States v. Urso*, 369 F. Supp. 2d 254, 273 (E.D.N.Y. 2005)); and then citing *Nachamie*, 91 F. Supp. 2d at 572 ("A review of the case law in this district reveals no clear distinction among circumstances in which courts grant a request for the names of unknown unindicted co-conspirators and circumstances in which they do not."). However, in determining whether to grant a bill of particulars seeking the identity of unindicted co-conspirators, the court must weigh the defendant's need for information to adequately prepare a defense against legitimate law enforcement concerns and any risk of compromising an ongoing investigation. *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000) ("[I]f the discovery has been voluminous, identification of known unindicted co-conspirators will help a defendant focus his investigation and prepare for trial. On the other hand, considering the potential danger to the co-conspirators and the risk of compromising continuing investigations allows a court to balance a defendant's need for the information against legitimate law enforcement concerns." (quoting *Nachamie*, 91 F. Supp. 2d at 573 & n.8)).

The Government does not contend that identifying the known unindicted Short Sale Co-Conspirators would risk compromising the integrity of any investigation or pose any other "legitimate law enforcement concern." (*See* Gov't Opp'n 17.) Moreover, given the voluminous nature of the discovery, (*see* Defs.' Mot. 7), identification of any known unindicted co-conspirators is necessary to facilitate Defendants' review of the material and preparation for trial. Thus, Defendants' need for the information as to the identities of unindicted co-conspirators outweighs any legitimate law enforcement and investigatory concerns. *See Pinto-Thomaz*, 352 F. Supp. 3d at 303 (granting defendant's motion "for a bill of particulars as to the identities of unindicted co-conspirators" on the grounds that "[t]he [g]overnment has made no showing that

there would be any risk of compromising a continued investigation or other dangers resultant

from identifying unindicted co-conspirators" (citing *Bin Laden*, 92 F. Supp. 2d at 241)).

      **c.**   **Alleged misrepresentations, victims, and loss resulting from short sale transactions**

      Defendants argue that identification of the "the documents and statements that are alleged

to be false, the [D]efendants and alleged co-conspirators who are alleged to have participated, the

identities of the alleged victims, and the alleged loss that resulted" are "essential to [D]efendants'

ability to effectively prepare their defense at trial," because even if the Government narrows the

list of transactions as requested, "reviewing some subset of [the discovery materials] for this

information would require [D]efendants to sort through hundreds or even thousands of pages of

discovery per property only to guess at which elements and parties are relevant in each instance,

or whether the transaction will even figure in the [G]overnment's proof at all."  (Defs.' Mot. 11.)

      The Government contends that by demanding it "identify *every* . . . misrepresentation

made, and the specific documents that contain those misrepresentation[s], the [D]efendants are

demanding a preview of the [G]overnment's trial evidence, including witness testimony, which

is not permissible use of a bill of particulars."  (Gov't Opp'n 16.)  In support, the Government

argues that "[t]his request is similar to a request that the government identify every overt act that

is part of conspiracy, which is also not a proper use of a bill of particulars."  (*Id.* (first citing

*Carroll*, 510 F.2d at 509; and then citing *Nachamie*, 91 F. Supp. 2d at 575).)  In addition, the

Government argues that "[i]dentification of victims is not necessary to apprise [Defendants] of

the nature of the alleged conspiracy" and to the extent that "the identity of the owner of a specific

property and the lenders who extended a mortgage on that property and later filed a satisfaction

of that mortgage after the property transferred ownership" is not included in the discovery, this

information is publicly available.  (*Id.* at 17 (citing *United States v. Dolney*, No. 04-CR-159,

2005 WL 1076269, at *6 (E.D.N.Y. May 3, 2005)).)  The Government also argues that "the specific amount of loss suffered by each victim due to the fraud is irrelevant to understanding the nature of the charges set forth in the Indictment, and is an issue to be resolved at sentencing, not trial."  (*Id.* at 18.)

"There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."  *Carroll*, 510 F.2d at 509; *see also United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars." (quoting *Hemphill v. United States,* 392 F.2d 45, 49 (8th Cir. 1990))); *United States v. Shteyman*, No. 10-CR-347, 2011 WL 2006291, at *3 (E.D.N.Y. May 23, 2011) ("[A] defendant is not entitled to preview, via a motion for bill of particulars, an extended trailer of the feature the [g]overnment plans to screen for the jury well in advance of the premiere."); *Kahale*, 789 F. Supp. 2d at 375 (denying defendants' request for "the particular representations" alleged to have been made in furtherance of the conspiracy because "'[a]s a general rule, the defendant does not "need" detailed evidence about the conspiracy in order to prepare for trial properly' for '[i]t is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the government intends to adduce to prove their criminal acts'" (quoting *Feola*, 651 F. Supp. at 1132)); *United States v. Fruchter*, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000) ("The [g]overnment is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." (first citing *United States v. Wilson*, 565 F. Supp. 1416, 1438–39 (S.D.N.Y. 1983); and then citing *United States v. Andrews*, 381 F.2d 377, 378 (2d Cir. 1967))).  "[A] defendant may not employ a bill of particulars as a general investigative tool," and a bill of particulars "will not be issued simply to

'force the [g]overnment to particularize all of its evidence.'"  *United States v. Guerrero*, 669. F.

Supp. 2d 417, 426 (S.D.N.Y. 2009) (first citing *United States v. Ballesteros Gutierrez*, 181 F.

Supp. 2d 350, 356 (S.D.N.Y. 2002); and then quoting *United States v. Henry*, 861 F. Supp. 1190,

1197 (S.D.N.Y. 1994))).

        The Indictment describes the types of misrepresentations made in the Short Sale Schemes

and identifies the types of documents that contain those misrepresentations.  (*See e.g.,* Ind.

¶¶ 27(c), 28(b), and 29(f).)  The Indictment therefore sufficiently details the overt acts

undertaken in furtherance of the alleged conspiracy to allow Defendants to prepare for trial and

to prevent surprise.  *See Bortnovsky*, 820 F.2d at 574 ("Generally, if the information sought by

defendant is provided in the indictment or in some acceptable alternate form, no bill of

particulars is required."); *United States v. Monserrate*, No. 10-CR-965, 2011 WL 3480957, at *4

(S.D.N.Y. Aug. 4, 2011) (request for bill of particulars denied where "the [i]ndictment and

discovery materials are sufficient to apprise the defendant of the charge against him").

Defendants' request for "the alleged misrepresentation(s) made and the document(s) in which

they appear," for each short sale transaction, (Defs.' Mot. 8), seeks to improperly compel the

Government to preview its legal theories and disclose the precise way in which the Government

intends to prove its case.  Accordingly, the Court denies the request.  *See United States v.

Perryman*, 881 F. Supp. 2d 427, 430–31 (E.D.N.Y. 2012) ("It is important to recall that a bill of

particulars is not a discovery device and 'should not function to disclose evidence, witnesses, and

legal theories to be offered by the [g]overnment at trial or as a general investigative tool for the

defense.'" (quoting *Henry*, 861 F. Supp. at 1197)); *see also United States v. Davis*, No. 17-CR-

615, 2021 WL 826261, *2 (E.D.N.Y. Mar. 3, 2021) ("Because a bill of particulars is not intended

to be a discovery device, the [c]ourt 'cannot compel the government to disclose, through a bill of

particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories, lest the defendant tailor his testimony to explain away the government's case.'" (quoting *United States v. Batista*, No. 06-CR-265, 2009 WL 910357, at *9 (E.D.N.Y. Mar. 31, 2009)); *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003) ("The [g]overnment may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the [g]overnment's evidence or legal theories." (quoting *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001))).

Finally, the Court denies Defendants' request for the identities of the alleged Short Sale Victims and the loss resulting from the allegedly fraudulent short sale transactions, as this information is not necessary to inform Defendants of the nature of the conspiracy alleged and is otherwise available through the discovery materials and public sources of information.  (*See* Gov't Opp'n 17–18); *see also United States v. Akhavan*, 20-CR-188, 2020 WL 2555333, *2 (S.D.N.Y. May 20, 2020) (denying defendants' request for "the identities of the victim banks," in finding that "the indictment allege[s] a scheme for which the existence of an actual victim is not required, [and] also the indictment is already quite clear that the goal of the charged conspiracy was not to defraud any bank in particular"); *United States v. Brumaire*, No. 18-CR-153, 2018 WL 5817540, *1 (S.D.N.Y. Oct. 19, 2018) (denying defendant's request for "the specific loss amount attributed to the defendant" and "the general conspiracy loss amount," as the discovery "included records from the banks where the fraudulent transactions occurred, extensive details about the fraud, the defendant's involvement and the co-conspirators' involvement — provides the defendant with more than sufficient information to prepare for trial); *Kahale*, 789 F. Supp. 2d

at 374 (denying request for identities of alleged victims as "the defendants already have, in accessible format, all of the requested information regarding the identities of the alleged victims" (citing *Bortnovsky*, 820 F.2d at 574)).

    **d.   Remaining requests**

        Defendants argue that although the Indictment provides examples of the Government's allegation that Defendants "paid or promised to pay borrowers to induce them to sell their homes to [Defendants] in short sale transactions, arranged to damage properties to lower their appraised value, misled borrowers regarding the nature of deed transfers, and filed fraudulent UCC-1 Financing Statements on properties they intended to purchase to deter other buyers," the Government does not indicate that these examples are exhaustive, necessitating a bill of particulars as to these remaining allegations.  (Defs.' Mot. 12.)

        The Government contends that Defendants are not entitled to these specifics beyond what is disclosed in the Indictment or otherwise provided to date because "[i]n many instances, evidence on certain of these allegations will be offered in testimony," and "disclosure of certain false and fraudulent statements made in furtherance of the charged schemes would ultimately amount to early disclosure of witness statements, and, therefore, the identities of the [G]overnment's witnesses, which is not warranted at this time."  (Gov't Opp'n 18.)

        As discussed above, the law is settled that in alleging a conspiracy, the Government is not required to "disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."  *Carroll*, 510 F.2d at 509; *see also Kahale*, 789 F. Supp. 2d at 375 ("It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the government intends to adduce to prove their criminal acts." (quoting *Feola*, 651 F. Supp. at 1132)).  The Indictment and discovery

materials provide Defendants sufficient detail regarding the nature of the schemes and overt acts allegedly taken in furtherance of the conspiracy to allow Defendants to effectively prepare for trial.  The Court denies Defendants' request for an exhaustive list of all of Defendants' overt acts as the request exceeds the proper scope of a bill of particulars.  *See United States v. Shkreli*, No. 15-CR-637, 2016 WL 8711065, at *4 (E.D.N.Y. Dec. 16, 2016) ("[R]equests for a bill of particulars, which seek the identification of specific documents relating to the indictment, or seek information that is not necessary to understand the charges or information that would reveal the [g]overnment's legal theories, are routinely denied." (collecting cases)).

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for a bill of particulars.  The Court grants Defendants' motion for a bill of particulars regarding: (1) each short sale transaction alleged to be part of the MIP and Exclusive Homes Schemes; and (2) the identity of known unindicted Short Sale Co-Conspirators.  The Government is directed to provide particulars regarding the MIP and Exclusive Home Schemes and the names of any known unindicted Short Sale Co-Conspirators within thirty days of the date of this Memorandum and Order.  The Court otherwise denies Defendants' motion for a bill of particulars.

Dated: May 6, 2021
       Brooklyn, New York

SO ORDERED:

 s/ MKB
MARGO K. BRODIE
United States District Judge