͠כ 07

## SIGNATURE PAGE

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement and upon its acceptance by the Manager on behalf of the Investor Company, as provided below, this Subscription Agreement shall bind the Investor Company and the undersigned shall become a Member, effective as of the acceptance date set forth below.

**For entity Subscribers:**

3 Spec Holdings Inc
Please print or type name of Subscriber

*[signature]*
Stamp and signatures of authorized signatories

Name Bernard M. CIROTA

Date 9 June 2015

US$ 1,000,000
Subscription Amount

**For individual Subscribers:**

_____
Please print or type name of Subscriber

_____
Signature

Date _____

US$ _____
Subscription Amount

Mailing Address of Subscriber:

_____

Email: DCIROTAproperty@Bezeqint.com
Telephone: 972 52 380 1708

---

### ACCEPTANCE OF SUBSCRIPTION
*to be filled out only by the Investor Company*

The Investor Company hereby accepts the above application for subscription for the Interest and the Subscriber is admitted to the Investor Company as a Member as of the date set forth below.

**3 SPEC INVESTORS LLC**

By: 613 Summit Corp., its manager

By: *[signature]*
Name:
Authorized Signatory

By: *[signature]*
Name:
Authorized Signatory

Acceptance Date: _____

## Appendix A – Term Sheet

235 51st Street, Brooklyn, New York
120 Marcus Garvey Boulevard, Brooklyn, New York
354 Stuyvesant Avenue, Brooklyn, New York

| 1. | Property / Project | Acquisition of 235 51st Street, Brooklyn, New York; transfer of 100% of membership interests in 120 Marcus Garvey LLC, owner of 120 Marcus Garvey Blvd, Brooklyn, New York; and transfer of 49% of membership interests in 354 Stuyvesant LLC, owner of 354 Stuyvesant Avenue, Brooklyn, New York (collectively, the "Properties"), and the renovation and sale of the Properties in accordance with the Business Plan. |
|---|---|---|
| 2. | Investor Company | 3 Spec Investors LLC, a newly formed Delaware limited liability company (the "Investor Company"). 613 Summit Corp., a New York corporation (the "Manager") will be the manager of the Investor Company and will make all decisions on the Investor Company's behalf. Manager is an affiliate of BHRE Group LLC. The Investor Company will be owned as follows: <br><br> Member / Membership Interests / Initial Capital Contribution <br> Investors / 99.99% / $ 1,609,839.00 <br> Manager / 0.01% / $ 161.00 |
| 3. | Property Entity | At closing, the Properties will be acquired by 180 Marstuy LLC, a New York limited liability company (the "Property Owner"), pursuant to a purchase contract for 235 51st Street, Brooklyn, NY, assignment and assumption of 100% of the membership interests in the entity owning 120 Marcus Garvey Boulevard, and assignment and assumption of 49% of the membership interests in the entity owning 354 Stuyvesant Avenue, Brooklyn, NY, all as more particularly set forth in the Property Owner LLC Agreement. <br><br> Scott Kushnick will be the manager of the Property Owner (together, the "Property Manager"). EHNY LLC, a New York limited liability company (the "Developer"), is the developer of the Project and a member of the Property Owner. <br><br> The Property Owner will be owned as follows: <br><br> Member / Membership Interests / Capital Contribution <br> 3 Spec Investors LLC / 90% / $1,610,000.00 |

Investor Initials

Note: This Term Sheet is a summary of certain substantive terms of the transaction. Investors should carefully review the Investor LLC Agreement and the Property Owner LLC Agreement for the full terms of the transaction. Investors acknowledge that the agreements attached hereto as Appendix C and Appendix D are subject to change with respect to provisions not containing materially substantive terms.

11

A.H.
T.B.

| | | | | |
|---|---|---|---|---|
| | | EHNY LLC | 10% | $ 178,889.00 |
| | | Total: | 100.00% | $ 1,788,889.00 |
| 4. | Management of Property Entity | Tzvi Ben David or Aaron Harow (the "Investor Company Representatives") shall have full authority to act on behalf of the Investor Company. Management decisions of the Property Owner will be made by the Property Managers except that certain major decisions will also require the consent of the Investor Company Representatives. | | |
| 5. | Developer's and Manager's Interests | Certain Hard Costs for construction and Soft Costs as described in the Business Plan will be paid to entities affiliated with the Developer that will be performing the development work for the Project. The Property Owner will pay the purchase price of approximately $2,525,000.00 for the Properties, which represents the price and consideration payable by Property Owner for the purchase or transfer of ownership interests of the Properties, other than standard closing costs. The Subscriber hereby acknowledges that the actual price Developer (or its affiliate) has paid for the Properties may be lower than the purchase price the Property Owner will pay for the Properties, and that a portion of the difference between the price the Developer (or its affiliate) paid for the Properties and the purchase price the Property Owner will pay for the Properties will be retained by Developer and Manager or their affiliates to cover various costs and expenses and as profit. | | |
| 6. | Fees | Project Management Fee: After Closing, the Property Owner shall pay a project management fee in an aggregate amount equal to one and 49/100 percent (1.49%) of the total projected project costs as stated in the Business Plan to the Manager. | | |
| 7. | Cost Overruns & Additional Contributions | In the event that additional contributions are required to be paid for project costs (including, without limitation, any interest payments due on the loans) as a result of a delay in the Project or for any other reason, the Developer alone shall make a loan to the Property Owner in the amount by which the actual Hard Costs have exceeded the amounts set forth in the Business Plan (a "Cost Overrun Loan"). | | |

_____
Investor Initials

Note: This Term Sheet is a summary of certain substantive terms of the transaction. Investors should carefully review the Investor LLC Agreement and the Property Owner LLC Agreement for the full terms of the transaction. Investors acknowledge that the agreements attached hereto as Appendix C and Appendix D are subject to change with respect to provisions not containing materially substantive terms.

12

| 8. | Buy-Out Right | If (a) within six (6) months after Closing, the Property Owner shall not have obtained all permits, licenses and/or approvals from governmental authorities necessary to carrying out the implementation of the Business Plan pertaining to demolition and construction of the project, (b) within six (6) months after Closing, a binding commitment from the construction lender has not been obtained, or (c) if at any time after Closing, it is determined that the construction of the Project on the Properties (or any one or more of them) cannot be built as contemplated in the Business Plan, then the Investor Company will have the right to force the Developer to buy-out its interest in the Property Owner for a purchase price that would return all of the Investor Company's Capital Contributions and provide the Investor Company with a cumulative annualized return of ten percent (10%). |
|---|---|---|
| 9. | Distribution of Funds by the Property Owner | All revenues received by the Property Owner from the Properties shall be distributed as follows:<br><br>1. First, to pay any outstanding principal and interest indebtedness of the Property Owner that are due under any loan or loans obtained for the purpose of funding the acquisition, development and construction of the Properties;<br><br>2. Second, to pay any other debts or obligations of the Property Owner, including without limitation, any obligations to vendors, materialmen, professionals and the like that are due;<br><br>3. Third, to the Members of the Property Owner, pro rata, in accordance with their Membership Interests, until each Member has received a return of their entire Capital Contribution;<br><br>4. Fourth, to the Members of the Property Owner, pro rata in accordance with their Membership Interests, until each Member has received (in addition to the amounts distributed in (3) above), an amount equal to an annual, non-compounded return of eight percent (8%) on their aggregate Capital Contributions (the "Preference Amount");<br><br>5. Fifth, to the Developer to pay the outstanding principal under any Cost Overrun Loans;<br><br>6. Sixth, to the Developer and Manager, until (a) the Developer has received the nominal amount of forty-four and seven tenths percent (44.7%) of the aggregate distributions under Paragraph 4 and under this Paragraph 6, and (b) the Manager has received the nominal amount of twenty-two percent (22%) of the aggregate distributions under Paragraph 4 and under this Paragraph 6;<br><br>7. Seventh, sixty percent (60%) to the Members, pro rata in accordance with their Membership Interests, twenty-seven percent (27%) to the Developer as a promote and thirteen percent (13%) to the Manager, until the Members have received, in addition to the return of their Capital Contribution in Paragraph 3 above, the nominal amount of nine and fifteen hundredths percent (9.15%) of |

Investor Initials

Note: This Term Sheet is a summary of certain substantive terms of the transaction. Investors should carefully review the Investor LLC Agreement and the Property Owner LLC Agreement for the full terms of the transaction. Investors acknowledge that the agreements attached hereto as Appendix C and Appendix D are subject to change with respect to provisions not containing materially substantive terms.

13

AH.
T.B.

|   |   |   |
|---|---|---|
|   |   | their aggregate Capital Contribution (including the Preference Amount paid to the Members in Paragraph 4 above); |
|   |   | 8. Eighth, fifty percent (50%) to the Members, pro rata in accordance with their Membership Interests, thirty-three percent (33%) to the Developer as a promote and seventeen percent (17%) to the Manager, until the Members have received, in addition to the return of their Capital Contribution in Paragraph 3 above, the nominal amount of fifteen and thirteen hundredths percent (15.13%) of their aggregate Capital Contribution (including the Preference Amount paid to the Members in Paragraph 4 above and distributions pursuant to Paragraph 7 above); and |
|   |   | 9. Thereafter, thirty percent (30%) to the Members, pro rata in accordance with their Membership Interests, forty-seven percent (47%) to the Developer, and twenty-three percent (23%) to the Manager. |
|   |   | Upon any sale, the net sale proceeds thereof shall be paid to the escrow account of the Law Office of Michael Herskowitz, Esq. (or such other designee as the Developer and Investor Company Representatives approve), which proceeds shall thereafter be disbursed in accordance with the terms of the Property Owner LLC Agreement and upon prior written approval of the Developer and the Investor Company Representatives. |
|   | Distribution of Funds by the Investor Company | All funds received by the Investor Company from the Property Owner shall be distributed to the Investors as provided below, subject to reasonable reserves that Manager determines should be retained by the Investor Company to cover costs and capital requirements: |
|   |   | 1. First, to the Investors, pro rata in accordance with their Membership Interests, until each Investor has received a return of its entire Capital Contribution; and |
|   |   | 2. Thereafter, to the Investors, pro rata in accordance with their Membership Interests. |
| 11. | Adjustment of Distribution Percentages | Adjustment of Distribution Percentages. Notwithstanding the schedule of distributions set forth in Section 9 above, the percentages set forth in Paragraphs (7), (8), and (9) of Section 9 shall be adjusted as follows: |
|   |   | In the event that the Members of the Property Owner receive the return of their entire Capital Contribution prior to seven (7) months after the Closing (hereinafter, the "Developer's Target Date"), then the percentages of distributions due to the Developer pursuant to Paragraphs (7), (8) and (9) of Section 9 shall be increased by an amount equal to one and one-half percent (1.5%) for each complete calendar month prior to the Developer's Target Date that such event occurs, and the percentages of distributions due to the Members pursuant to said Paragraphs shall be correspondingly reduced; provided, however, that any increase to the percentages of distribution due to the Developer and Manager pursuant to this Section (and the |

Investor Initials

Note: This Term Sheet is a summary of certain substantive terms of the transaction. Investors should carefully review the Investor LLC Agreement and the Property Owner LLC Agreement for the full terms of the transaction. Investors acknowledge that the agreements attached hereto as Appendix C and Appendix D are subject to change with respect to provisions not containing materially substantive terms.

14

A.H.  T.B.                                    BL

|     |     | corresponding reduction to the distribution due to the Members) shall not exceed six percent (6%). |
| --- | --- | --- |
|     |     | In the event that the Members of the Property Owner do not receive the return of their entire Capital Contribution at or prior to eleven (11) months after the Closing, then the percentages of distributions due to the Members pursuant to Paragraphs (7), (8) and (9) of Section 9 shall be increased by an amount equal to one and one-half percent (1.5%) for each complete calendar month that passes thereafter, and the percentages of distributions due to the Developer pursuant to said Paragraphs shall be correspondingly reduced; provided, however, that any increase to the percentages of distribution due to the Members pursuant to this paragraph (and the corresponding reduction to the distribution due to the Developer and Manager) shall not exceed six percent (6%). |
|     |     | In the event that the sellable square footage of the Properties (or any one or more of them) is decreased by an amount greater than two percent (2%) of the sellable square footage as stated in the Business Plan, then the percentages set forth in Paragraphs (7), (8) and (9) of Section 9 shall be adjusted, so that the percentage due to the Members of the Property Owner will increase (and the percentage due to the Developer and Manager will correspondingly decrease) so that the projected return on the investment, based on the projected sale of the units, will be the same as the projected return prior to the adjustment to sellable square footage. |
| 12. | Financial Reporting | Each Investor will be responsible for filing its own US and foreign tax returns in connection with its investment in and distributions made from the Investor Company. Manager will assist the investors in selecting a qualified CPA and will provide all information available to Manger regarding the Project that is necessary for each Investor's tax reporting obligations. The Investor Company will provide K-1 tax reporting statements to the Investors on an annual basis. |
| 13. | Transferability Restrictions | The Membership Interests of the Investor Company held by each Investor is not transferrable without the prior written consent of Manager. |
| 14. | Other Terms | The Investment shall be subject to certain other terms and conditions which are set forth in the Investor LLC Agreement and the Property Owner LLC Agreement. |

Investor Initials

Note: This Term Sheet is a summary of certain substantive terms of the transaction. Investors should carefully review the Investor LLC Agreement and the Property Owner LLC Agreement for the full terms of the transaction. Investors acknowledge that the agreements attached hereto as Appendix C and Appendix D are subject to change with respect to provisions not containing materially substantive terms.

15

307

## OPERATING AGREEMENT OF
## 3 SPEC INVESTORS LLC
## INVESTOR MEMBER SIGNATURE PAGE

**INVESTOR MEMBER**

_____

39