UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

                  - against -                  **MEMORANDUM & ORDER**
                                                    19-CR-408 (MKB)

MICHAEL KONSTANTINOVSKIY,
TOMER DAFNA, and
AVRAHAM TARSHISH,

                            Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Defendants Michael Konstantinovskiy, Tomer Dafna, and Avraham Tarshish are charged

in a seven-count indictment with two counts of conspiracy to commit wire fraud and bank fraud,

in violation of 18 U.S.C. §§ 1349 and 3551 *et seq.* ("Counts One and Two"), and multiple

substantive counts of wire fraud related to specific transactions in violation of 18 U.S.C.

§§ 1343, 2 and 3551 *et seq.* ("Counts Three through Seven").[1]  (Indictment ¶¶ 36–42, Docket

Entry No. 1.)  Defendants are charged with conspiring to defraud lenders and borrowers by

providing them with false, misleading, and incomplete information in order to induce them to

execute short sales at fraudulently depressed prices, thereby causing losses to lenders and

borrowers (the "Short Sale Scheme").  (*Id.* ¶ 18.)  Jury selection and trial is scheduled to begin

August 12, 2024.  (Min. Entry dated July 1, 2024.)  Currently before the Court are the

---

[1]  All Defendants are charged in Count One for conspiracy to commit wire and bank
fraud as part of the MIP Scheme, in Count Two for conspiracy to commit wire and bank fraud as
part of the Exclusive Homes scheme, and in Count Five; Konstantinovskiy is charged in Count
Three; Dafna and Tarshish are charged in Counts Four, Six, and Seven.  (Indictment ¶¶ 25, 36–
42, Docket Entry No. 1.)  Defendants Iskyo Aronov and Michael Herskowitz pleaded guilty to
their charged counts.  (Min. Entry dated July 11, 2022 (Aronov's guilty plea); Min. Entry dated
June 27, 2024 (Herskowitz's guilty plea).)

government's motions *in limine*[2] and Defendant Tarshish's motion for clarification and

supplementation of the government's bill of particulars.[3]  At a pretrial conference held on July 1,

2024, the Court heard arguments from the parties and ruled on several of the motions.  (Min.

Entry dated July 1, 2024.)  The Court further explains its rulings below.

## I.   Government's Rule 404(b) evidence

The government seeks to introduce various evidence under Rule 404(b) of the Federal

Rules of Evidence.

### a.   Legal standard

Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of [a] crime, wrong or

. . . act is not admissible to prove a person's character in order to show that on a particular

occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However,

such evidence "may be admissible for another purpose, such as proving motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R.

Evid. 404(b)(2).  To be admissible, evidence of prior bad acts must be "(1) 'introduced for a

proper purpose,' (2) 'relevant to the charged offense,' (3) 'not substantially more prejudicial than

---

[2]  (Gov't Mot. in Limine ("Gov't Mot."), Docket Entry No. 310; Def. Dafna's Opp'n to Gov't Mot. ("Dafna Opp'n"), Docket Entry No. 318; Def. Tarshish's Opp'n to Gov't Mot. ("Tarshish Opp'n"), Docket Entry No. 319; Gov't Reply in Supp. of Gov't Mot. ("Gov't Reply"), Docket Entry No. 323; Gov't Suppl. Mot. in Limine ("Gov't Suppl. Mot."), Docket Entry No. 326; Defs.' Opp'n to Gov't Suppl. Mot. ("Defs.' Suppl. Opp'n"), Docket Entry No. 328.)
   Konstantinovskiy filed a letter informing the Court that he "join[s] in the responses of [his co-defendants] only to the extent, if at all, that they are generally applicable to him," because none of the evidence the government seeks to admit "is sought to be admitted against" him.  (Ltr. as to Michael Konstantinovskiy, Docket Entry No. 316.)

[3]  (Def. Tarshish's Mot. for Bill of Particulars ("Tarshish Mot."), Docket Entry No. 320; Gov't Opp'n to Tarshish's Mot. ("Gov't Opp'n"), Docket Entry No. 322; Def. Tarshish's Reply in Supp. of Tarshish Mot., Docket Entry No. 325.)

probative,' and (4) 'admitted with a limiting instruction if requested.'" *United States v. Bright*, No. 20-3792, 2022 WL 53621, at *2 (2d Cir. Jan. 6, 2022) (quoting *United States v. Rutkoske*, 506 F.3d 170, 177 (2d Cir. 2007)); *see also United States v. Saint Clair*, No. 22-2100, 2024 WL 413422, at *5 (2d Cir. Feb. 5, 2024) ("[U]nder this Circuit's 'inclusionary approach,' prior act evidence offered for any proper purpose is admissible so long as it is relevant to an issue at trial and the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002))).  The Second Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Ahaiwe*, Nos. 21-2491, 21-2946, 21-3082, 22-371, 2023 WL 4196954, at *3 (2d Cir. June 27, 2023) (quoting *United States v. Graham*, 51 F.4th 67, 81–82 (2d Cir. 2022)).  "Relevance toward a permissible purpose often turns on the similarity between the prior act and the charged offense." *Id.* (quoting *Graham*, 51 F.4th at 82).  "Significantly, when a conspiracy is charged, 'uncharged acts may be admissible as direct evidence of the conspiracy itself.'" *United States v. Matos*, No. 22-691, 2024 WL 1003292, at *1 (2d Cir. Mar. 8, 2024) (quoting *United States v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003).  "Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *Saint Clair*, 2024 WL 413422, at *5 (quoting *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993)).

However, just because a defendant contests an issue, such as knowledge or intent, it "does not open the door for the government and give it *carte blanche* to introduce any prior act of defendant that falls into the same crime category." *United States v. Edwards*, 342 F.3d 168,

177 (2d. Cir. 2003).  "Rather, some similarity or tangible connection between the acts must be identified, something that makes the prior act relevant to proving the contested fact."  *Id.*; *see also United States v. Bayfield*, 796 F. App'x 19, 21–22 (2d Cir. 2019) ("[E]vidence of uncharged acts is admissible when there is a 'tangible connection between the acts.'" (quoting *Edwards*, 342 F.3d at 177)).  "If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent."  *Garcia*, 291 F.3d at 137.  "[E]vidence of another act should not be admitted to show knowledge unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence."  *United States v. Gordon*, 987 F.2d 902, 908 (2d. Cir. 1993) (quoting *United States v. Afjehei*, 869 F.2d 670, 674 (2d Cir. 1989)).  "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged.  There is no necessity for synonymity but there must be substantial relevancy . . . ."  *Id.* (emphasis omitted) (quoting *Afjehei*, 869 F.2d at 674); *see also Graham*, 51 F.4th at 82 ("Relevance toward a permissible purpose often turns on the similarity between the prior act and the charged offense.").

To determine whether evidence should be admitted as 404(b) evidence, courts engage in a fact-intensive inquiry into the relevance of the prior act to the disputed fact.  *Compare Garcia*, 291 F.3d at 138 (finding erroneous the admission of the defendant's prior drug conviction where prior conviction was not "meaningfully probative" of defendant's knowledge of coded discussion and the "only similarity between the two drug transactions . . . [wa]s that both involved cocaine"), *and Gordon*, 987 F.2d at 909 (abuse of discretion for district court to admit evidence of defendant's possession of crack cocaine a year earlier to show that he knew the

4

person he was meeting in New York was carrying a large quantity of cocaine and marijuana), *and Afjehei*, 869 F.2d at 674 (finding abuse of discretion where district court allowed evidence of prior international trips to show that defendant knew he was trafficking heroin), *with Graham*, 51 F.4th at 82 (affirming admission of prior scheme "done at the same time as the charged conspiracy, with the same coconspirators, and with the same hallmarks"); *United States v. Paulino*, 445 F.3d 211, 221–22 (2d. Cir. 2006) (affirming decision to allow evidence of prior crack cocaine conviction to show that defendant had constructive knowledge of cocaine found in his closet), *and United States v. Aminy*, 15 F.3d 258, 259–60 (2d Cir. 1994) (no abuse of discretion for trial court to admit evidence that the defendant was arrested with a packet containing .334 grams of heroin at the time of arrest, to show defendant's knowledge and intent with respect to charge of conspiracy to import heroin, particularly where expert testimony indicated that the packet of heroin was packaged in a manner more consistent with a dealer's sample than with personal use).

> **b.    Evidence of Herskowitz's participation in the Kings Development Scheme**

The government concedes that because Herskowitz has pleaded guilty, the probative value of this evidence is likely moot.  (Gov't Reply 17–18.)  The Court therefore does not address whether this evidence is admissible under Rule 404(b).

> **c.    Herskowitz and Dafna's alleged misappropriation of funds from Herskowitz's attorney escrow account and misuse of bank accounts**

The government initially sought to introduce evidence that "Herskowitz misused his attorney escrow account and another business account he held" in order to issue funds to or on behalf of his coconspirators, Dafna and Tarshish.  (Gov't Mot. 7.)  In reply, the government clarified that because "Herskowitz is now expected to enter into a guilty plea prior to trial, . . . most of this evidence" may be rendered moot.  (Gov't Reply 17–18.)  As noted earlier,

Herskowitz has entered his guilty plea.  (Min. Entry dated June 27, 2024.)  However, the Court addresses the evidence sought to be entered to the extent that the government seeks to introduce it against the other Defendants.  In particular, the government seeks to introduce evidence that:

1) "Herskowitz dispersed funds from both his attorney account and another business account before funds were deposited to cover the charges";
2) "Herskowitz . . . allowed defendant Dafna to borrow $3 million from his attorney escrow account so that Dafna could use those funds as a personal loan";
3) "Bank records for Herskowitz's attorney account . . . show a total of approximately $38 million moved through that account, and the account often carried a negative balance, including a significant negative balance for weeks at a time"; and
4) "Bank records for Herskowitz's business account, . . . which was also used to receive and disperse funds connected to the Short Sale Scheme and received more than $6 million from the attorney trust account, show a total of approximately $302 million moved through that account, and that account . . . also carried a significant negative balance."

(Gov't Mot. 7–8.)  The government argues that this evidence "tends to establish the criminal nature of the relationship between [Herskowitz and Dafna] and specifically their willingness to engage in significant financial impropriety together."  (*Id.* at 8.)  The government further contends that "the risk of unfair prejudice to . . . Dafna is small, given that the charged fraud is significantly more serious than lending Dafna money from Herskowitz's escrow account."  (*Id.* (emphasis omitted).)

Dafna, responding only to evidence of the purported personal loan of $3 million, argues that evidence of the loan is impermissible under Rule 404(b).  (Dafna Opp'n 4–6.)  In support, Dafna argues that the evidence creates "no inference of a criminal relationship between Dafna and Herskowitz" because "[b]orrowing money is not inherently probative of criminality."  (*Id.* at 5.)  He also argues that even if such an inference were raised, "that conduct is dissimilar from, and has no bearing upon, allegations that Herskowitz and Dafna allegedly conspired with others in two different short sale schemes to defraud financial institutions and homeowners."  (*Id.*)

6

Dafna also states that he "will dispute any suggestion that [he] knew of Herksowitz's alleged mismanagement of his accounts." (*Id.* at 6.)

Tarshish argues that "evidence relating to Mr. Herskowitz's other 'crimes, wrongs, or acts' is plainly prejudicial" to him. (Tarshish Opp'n at 15–16.) In support, he argues that "the evidence at trial will show that Mr. Tarshish paid Mr. Herskowitz for legal services," and that "[e]vidence suggesting that Mr. Herskowitz was a dishonest lawyer who misused client funds risks inviting the jury to conclude that Mr. Tarshish is similarly guilty by association." (*Id.*)

The Court denies the government's motion to admit evidence of Herskowitz's misuse of funds from his attorney escrow account and other business account. Because of Herskowitz's guilty plea, the only other Defendant implicated in this evidence is Dafna. The Court therefore considers only whether this evidence is admissible against Dafna. The government has failed to establish how Dafna's acceptance of a personal loan serves any of the permissible purposes under Rule 404(b). *See* Fed. R. Evid. 404(b)(2). The acceptance of a large personal loan, especially where none of the proposed evidence suggests that Dafna knew Herskowitz was misappropriating funds, is wholly irrelevant to the charged offense, and could serve no other purpose than to suggest to the jury that Dafna had a "bad character," *see Ahaiwe*, 2023 WL 4196954, at *3, and the government has not identified any "similarity between the prior act and the charged offense," *Graham*, 51 F.4th at 82. The remaining evidence of Herskowitz's misuse of the attorney escrow and business accounts is not relevant to the cases against the other Defendants, and the government does not appear to suggest that it is. (*See* Gov't Reply 17–18.)

The Court therefore denies the government's motion to admit evidence that Herskowitz misused his attorney escrow account and another business account he held or that he made a personal loan to Dafna.

### d. Dafna's direction of a witness to commit check fraud on his behalf

The government seeks to introduce evidence that Dafna directed Witness-1, "who at the time was a bank employee with whom he was having a romantic relationship," to fraudulently pre-clear checks on Dafna's behalf in 2006 and 2007.  (Gov't Mot. 8–9.)  The government first contends that this evidence is admissible because "it shows the relationship between two participants in the conspiracy and is probative of their intent to engage in similar misconduct" at issue in this case.  (*Id.* at 9; *see also* Gov't Reply 1 ("[T]he government has identified Witness-1 as an unindicted co-conspirator.").)  Second, the government argues that "it shows Dafna's intent and motive to use personal and professional leverage to induce others to engage in misconduct on his behalf."  (Gov't Mot. 9.)  Third, the government also contends that it need not show that the fraudulent pre-clearance arrangement Dafna allegedly maintained with Witness-1 was a crime, because such prior act evidence is admissible to "explain the mutual trust that existed between conspirators."  (Gov't Reply 2 (citation omitted).)  The government argues that this evidence in turn "complete[s] the story of the crimes charged" by showing how the relationship between Dafna and Wintess-1 developed, eventually leading to the fraudulent short sale of 181 Schaefer Street, one of the properties underlying the charges.  (*Id.* at 4.)  Fourth, the government argues that this evidence "is essential for the jurors to understand Witness-1's participation in the scheme, and to explain her own intent, motivation and state of mind behind her actions in furtherance of the conspiracy."  (*Id.*)  Finally, the government contends that this evidence presents "no risk of unfair prejudice to Dafna . . . because pre-clearing checks is significantly less serious than the Short Sale Scheme."  (Gov't Mot. 9.)

Dafna argues that this evidence is unrelated to and dissimilar from the charged conspiracy, and further that it is entirely irrelevant to this case.  (Dafna Opp'n 7.)  In support,

8

Dafna contends that fraudulent check pre-clearance is not a criminal act, and that it is not probative of Dafna's knowledge and intent to engage in the charged conduct.  (*Id.* at 7–8.)  Dafna also argues that if the government is attempting to use this evidence to show that Dafna induced his charged coconspirators to engage in the Short Sale Scheme, then "it is impermissible character proof."  (*Id.* at 8.)  Finally, Dafna responds that the evidence is too prejudicial, because it suggests "that Dafna improperly used a romantic relationship for personal gain."  (*Id.*)

Tarshish argues that "the prejudice . . . that would flow [to him] from [admission of this evidence] is plainly unfair."  (Tarshish Opp'n 15.)  He contends that because the government charges Dafna and Tarshish with "operat[ing] Exclusive Homes together as business partners," this evidence "will unfairly and impermissibly invite the jury to draw the conclusion that because Mr. Dafna associated with Mr. Tarshish, Mr. Tarshish must have engaged in the same inappropriate conduct."  (*Id.*)

Applying the test for admission under Rule 404(b) outlined in section I.a *supra*, the Court concludes that this evidence is admissible.  As particularly relevant here, in a conspiracy case, uncharged conduct is admissible under Rule 404(b) if it serves "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed." *United States v. Samuels*, No. 22-1011, 2024 WL 177720, at *2 (2d Cir. Jan. 17, 2024) (quoting *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992)) (affirming admission of Rule 404(b) evidence of "uncharged robberies" to show how the relationship developed between the charged coconspirators); *see also United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("We have held repeatedly that it is within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship

between participants in the crime developed, or to explain the mutual trust that existed between coconspirators."); *Matos*, 2024 WL 1003292, at *2 (finding no abuse of discretion where district court admitted 404(b) evidence showing that "[defendant] and his coconspirators had previously committed crimes together, . . . demonstrat[ing] the mutual 'trust' that prompted the others to invite [defendant] to join" the charged conspiracy).

The Court therefore grants the government's motion to admit evidence that Dafna directed Witness-1 to pre-clear checks on his behalf, provided that Witness-1 does not testify that Dafna knew that the pre-clearance was fraudulent or improper.  If Witness-1 has direct personal knowledge of information that would show that Dafna knew the pre-clearance was fraudulent or improper, she may testify to that information.  The parties are instructed to follow the Court's ruling as discussed in more detail on the record at the pretrial conference.

### e. Tarshish's and Dafna's use of check-cashing businesses to launder proceeds of the Short Sale Scheme

The government seeks to introduce evidence that Dafna and Tarshish used check-cashing services "to generate cash and disguise the disposition of funds for themselves and others involved in the Short Sale Scheme."  (Gov't Mot. 9.)  The government contends that this includes evidence that over 150 checks, paid out of Herskowitz's accounts, were cashed at Coney Island Payroll ("CIP"), and that they were all payable to entities "associated with Dafna and Tarshish."  (*Id.* at 9.)  The government expects to introduce testimony that homeowners were often paid in cash derived from these checks in furtherance of the Short Sale Scheme.  (*Id.* at 9–10.)  The government argues that this evidence is "necessary to complete the story of the crime on trial."  (*Id.* at 10 (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).)  In the alternative, the government contends this evidence is admissible under Rule 404(b) because it is

"evidence of Dafna and Tarshish's plan, intent and knowledge of the Short Sale Scheme," and there is no unfair prejudice to Dafna or Tarshish.  (*Id.* at 10–11.)

Dafna argues that this evidence is inadmissible because "[t]he government has not alleged money laundering in this case," and "the government seeks to present propensity proof in the guise of 404(b) proof."  (Dafna Opp'n 9.)  He contends that "defendants will seek to refute the government's claim that CIP was used to conceal or disguise the origin of illegal proceeds by introducing extensive proof — transaction by transaction, check by check — that cash was generated by CIP for legitimate purposes, including payment for labor and materials in Dafna's construction and renovation business where cash payments are both common and preferred."  (*Id.* at 10.)  Tarshish argues that the government offers no evidence to show that these funds were illegally obtained, and that determining whether CIP was used to launder money would "necessitate[] a minitrial that poses a substantial risk of prejudice and confusion."  (*Id.*)

Tarshish makes similar arguments, and contends that the only effect of allowing this evidence "would be to risk improperly inducing the jury to believe that . . . Tarshish had a criminal propensity to engage in deceitful acts."  (Tarshish Opp'n 3.)  He argues that the government's proffer lacks sufficient detail, that the government "presumes that use of a check cashing agency . . . must be for an inherently nefarious purpose," that the money laundering scheme "bears no logical or factual relation" to this case, and that this evidence does not serve any of the permissible purposes under Rule 404(b).  (*Id.* at 3–6.)

As discussed in more detail at the pretrial conference, the government may present, as direct evidence, any evidence of proceeds gained from the charged Short Sale Scheme, and evidence that Defendants cashed these proceeds with CIP (and any other check-cashing businesses) to the extent that such evidence exists.  However, the Court denies the motion to the

11

extent that the government seeks to introduce evidence of a "money laundering scheme"
premised simply on the fact that checks were cashed with CIP.  To the extent the government
intends to introduce evidence showing that the proceeds of the Short Sale Scheme were cashed
with CIP, and used cash generated from CIP to pay homeowners as part of the scheme, such
evidence is admissible to "complete the story of the crimes charged."  *Samuels*, 2024 WL
177720, at *2 (quoting *Pitre*, 960 F.2d at 1119).

The Court accordingly grants the government's motion to introduce evidence that Dafna
and Tarshish cashed checks representing the proceeds of the Short Sale Scheme with CIP and
other check-cashing businesses and used cash from CIP to pay homeowners as part of the
scheme, but the government may not introduce evidence or arguments suggesting that this
constituted a separate money laundering scheme.

> **f.  Evidence that Dafna and Tarshish defrauded investors who provided funds for real estate transactions**

The government seeks to introduce at trial evidence that Dafna and Tarshish fraudulently
obtained financing to support real estate transactions between 2014 and 2016, some of which
were part of the Short Sale Scheme.  (Gov't Mot. 11–12.)  The government seeks to offer
testimony from individuals who gave Dafna and Tarshish money to purchase certain properties
on their behalf, money that Dafna allegedly then used to purchase those properties "in the name
of an LLC that Dafna controlled."  (*Id.* at 11.)  The government intends to show that Dafna then
transferred these properties to other entities without the knowledge of the financers.  (*Id.*)  The
government also seeks to introduce evidence showing that "Dafna improperly padded expenses
for properties that Dafna managed or renovated on behalf of others."  (*Id.*)  The government
argues that this evidence is admissible "either as direct evidence of the scheme or under Rule
404(b)."  (*Id.*)  The government argues that this evidence offers "a necessary back story to the

charged crime," and that evidence that Dafna padded expenses "goes to his motive, intent and lack of mistake." (*Id.*)

Dafna first argues that evidence of alleged padding of invoices "is blatantly impermissible under 404(a) and 403 and should be flatly rejected." (Dafna Opp'n 11.) He argues that it is "pure impermissible propensity proof" because it suggests that he "defrauded clients by overcharging for construction work just like he defrauded banks and homeowners in a completely unrelated and dissimilar short sale scheme." (*Id.*) He argues that he would be forced to "elicit evidence, job by job, for dozens of construction projects, including testimony from laborers and the introduction of invoices and scope-of-work records," leading to a "minitrial" on the issue. (*Id.* at 11–12.) Second, Dafna argues that allegations that Dafna and Tarshish deceived investors in transactions is impermissible propensity proof where only "some but not all" of the transactions were part of the Short Sale Scheme and the alleged deceit of investors is not charged conduct. (*Id.* at 12.) Finally, Dafna contends this evidence should be precluded under Rule 403 because it runs the "risk of prejudice and jury confusion." (*Id.* at 12–13.) In support, he asserts that "[t]he defense will argue that every investor dollar was properly accounted for and properly allocated," and will "dispute each claim by each investor as to each specific property in which they allegedly invested." (*Id.* at 12.)

Tarshish similarly argues that allowing this evidence will "lead to time-consuming mini-trials on an ancillary issue" and that "[e]vidence of alleged fraud in financing agreements with investors is not direct evidence of the charged short sale scheme," nor is it "admissible for any proper 404(b) purpose." (Tarshish Opp'n 10.) Tarshish argues that courts in this circuit have regularly excluded similar evidence of unrelated allegedly unlawful activity, where such activity was not "inextricably intertwined" with the underlying offense. (*Id.* at 11–12.) Tarshish argues

13

that introducing these issues will risk "confusing the jury and wasting time," because "[i]t will require detailed exploration of complex factual issues that are wholly collateral to the rest of the trial." (*Id.* at 13.)

The allegations set forth in the Indictment are that Defendants defrauded lenders and borrowers by providing false or incomplete information to induce them to execute short sales at fraudulently depressed prices. For the reasons explained at the pretrial conference, the Court denies the motion. As the government concedes, at most, it will seek to offer this evidence as rebuttal evidence. While the government may introduce evidence as to how the Short Sale Scheme was funded, an inquiry into whether Dafna and Tarshish obtained this funding fraudulently risks confusing the jury and creating undue prejudice under Rule 403. As argued by Tarshish, this evidence is similar to that sought to be introduced in *United States v. Kurland*, in which the court excluded evidence of the defendant's fraudulent scheme unrelated to the scheme underlying the charged offense. No. 20-CR-306, 2022 WL 2669897, at *4–6 (E.D.N.Y. July 11, 2022). The court in that case concluded that while these unrelated transactions "may provide additional context for the jury, the schemes are not inextricably linked, as they involve different parties and different types of transactions." *Id.* The same is true here, as the charged Short Sale Scheme, if proven, exists with or without evidence of the fraudulently induced financing.

Evidence that Dafna and Tarshish misused funds supporting the Short Sale Scheme is the core of the government's case because the government argues that carrying out the Short Sale Scheme would constitute a misuse of funds. What the government is not required to show, however, is that the funds themselves were obtained through a wholly separate fraudulent scheme. The evidence also does not necessarily speak to any "preparation" or "plan" that would be permissible under Rule 404(b)(2), because while the funding itself is relevant, it remains

14

unclear why it must be shown that the funding was fraudulently obtained other than to suggest the Defendants' bad character.  *See Bright*, 2022 WL 53621, at *2 (stating that evidence admissible under Rule 404(b)(2) must be "introduced for a proper purpose," "relevant to the charged offense," and "not substantially more prejudicial than probative").

Because the government has not shown a proper purpose for the admission of this evidence, the Court denies the motion.  For these same reasons, the Court also denies the government's motion to introduce evidence that Dafna padded expenses in unrelated construction projects.  If Defendants introduce evidence or make arguments suggesting that these transactions were legitimate, the government may present evidence in rebuttal.

> **g.  Evidence of Tarshish's berating, insulting, and physical assault of Witness-2 and threats to Witness-3**

The government seeks to introduce at trial evidence that Tarshish "verbally berated," "insulted," and "physically assaulted Witness-2, a former employee" who "worked on several fraudulent short sales arranged by, facilitated or agreed to by Tarshish."  (Gov't Mot. 12.)  The government also intends to call Witness-3 at trial to testify about her experience "working for Dafna and Tarshish . . . in connection with the Short Sale Scheme."  (*Id.*)  The government also expects Witness-3 to testify that after she stopped her work with Defendants, one of the borrowers she worked with wished to continue working with her rather than with Tarshish, leading Tarshish to "threaten[] Witness-3 to the point where she had to report him to the police." (*Id.*)  The government contends that the above evidence is admissible both as direct evidence of the charged conspiracy and under Rule 404(b).  (*Id.*)  It argues that this evidence shows how Tarshish interacted with other members of the conspiracy, and is therefore "inextricably intertwined with the evidence regarding the charged offense" and "necessary to complete the story of the crime on trial."  (*Id.* (quoting *Carboni*, 204 F.3d at 44).)  The government also

15

argues that this evidence shows Tarshish was "in a significant position of power relative to the two witnesses," and that this is "relevant to explaining how the conspiracy was implemented." (*Id.*)  The government next contends that evidence of Tarshish's threats "over the prospect of losing money from short sale transactions highlights Tarshish's financial motive, plan and preparation to engage in fraud or other illegal activity during the conspiracy period."  (*Id.* at 12–13.)  Finally, in reply, the government notes that if it is precluded from offering evidence of these altercations, then "the defendants should also be precluded from cross-examining either of these witnesses about these altercations for some other purpose, such as to show bias."  (Gov't Reply 18.)

Tarshish argues that the government should be precluded from introducing testimony regarding this alleged violent behavior.  (Tarshish Opp'n 6–9.)  In support, Tarshish first argues that the government has not offered a sufficient factual basis for these allegations.  (*Id.* at 6–7.)  He argues that the government has not identified either Witness-2 or Witness-3, nor has it produced any evidence of the alleged police report filed by Witness-3.  (*Id.* at 7.)  Tarshish is therefore "hamstrung in his ability to respond."  (*Id.*)  He argues next that allegations of these conflicts are not direct evidence of the charged scheme because they are unrelated to the underlying offense, which requires proof of "misrepresentations to lenders, loan servicers, or homeowners."  (*Id.*)  Third, he argues that evidence of anger over losing money is not enough to support the inference that he was engaged in planning or preparing a fraud conspiracy.  (*Id.* at 7–8.)  Tarshish contends that the government seeks to introduce this evidence for only one purpose: "to inflame the jury and to turn them against Mr. Tarshish."  (*Id.* at 8.)  Finally, Tarshish argues that the government could show proof of "how the conspiracy was implemented" and of

Tarshish's "significant position of power relative to the two witnesses" through far less inflammatory and prejudicial evidence.  (*Id.* at 8–9 (quoting Gov't Mot. 12).)

Generally, the Second Circuit has "approved the admission of evidence of uncharged crimes when the uncharged crimes 'did not involve conduct more inflammatory than the charged crime.'"  *United States v. Zhong*, 26 F.4th 536, 553 (2d Cir. 2022) (quoting *Paulino*, 445 F.3d at 223) (collecting cases)).  For example, in *Zhong*, the Second Circuit found an abuse of discretion when the district court admitted — in the defendant's trial for forced labor and visa fraud conspiracy — evidence of the defendant's violence and threats against employees, "including kidnappings, weapon use, imprisonment, threats of physical injury, and evictions of workers' families."  *Id.* at 545, 552–53.  The Second Circuit held that although "other act" evidence could be admitted to show, *inter alia*, knowledge, intent, planning, or preparation, such evidence "must be sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act."  *Id.* at 553 (internal quotation marks omitted).  It held that evidence of this violent treatment, though relevant to "the story of the crimes charged against" the defendant, were nevertheless erroneously admitted because "the evidence of uncharged crimes described conduct that was 'significantly more sensational and disturbing than the charged crimes,' and could 'lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'"  *Id.* (first quoting *United States v. Curley*, 639 F.3d 50, 62 (2d Cir. 2011); and then quoting *Paulino*, 445 F.3d at 223).

As discussed at the pretrial conference, the evidence presented at the conference appears to be admissible, unlike the evidence described in the government's written submission, which appears to be more inflammatory than the charged crimes.  The Court grants the motion but cautions the government that it is not permitted to sensationalize the conduct.  The evidence adds

17

context to the relationship between Tarshish and the two uncharged coconspirators.  However,  if

the parties are unable to agree to how much information should be presented to the jury after

review of the witness statements provided pursuant to 18 U.S.C. § 3500, Defendants may renew

their objections to this testimony, so that the Court can determine whether "the probative value

of the evidence is . . . substantially outweighed by the risk of unfair prejudice."  *Saint Clair*,

2024 WL 413422, at *5.

The Court therefore grants the government's motion to present evidence regarding

Tarshish's interactions with Witness-2 and Witness-3 to the extent they are relevant to the Short

Sale Scheme and do not include sensationalized details, but without prejudice to further

evaluation.

## II.  Admission of ACRIS Records

The government seeks to introduce deeds, mortgages, and other property records filed on

New York City's Automated City Register Information System ("ACRIS") under the hearsay

exceptions in Rule 803(14) for records of documents that affect an interest in property and Rule

803(15) for relevant statements contained in such documents.  (Gov't Mot. 13.)  The government

contends that ACRIS documents "have been regularly admitted" by courts in this circuit under

Rule 803(14).  (*Id.*)  It also argues that ACRIS documents are admissible under Rule 803(15)

because the reliability and accuracy of ACRIS documents are well established and courts

routinely take judicial notice of these documents.  (*Id.* at 14.)

Dafna does not oppose admission of ACRIS records under Rule 803.  (Dafna Opp'n 13.)

Tarshish also raises no objection to their admission under Rule 803, "[a]ssuming they are

properly authenticated."  (Tarshish Opp'n 22.)  He does, however, request that the Court "reserve

decision on these requests until the defendants are given the opportunity to review the

government's exhibit list to ensure that the documents meet the requirements for admissibility."
(*Id.*)

The parties do not contest the admissibility of these records.  Moreover, they qualify as
"record[s] of . . . document[s] that purport[] to establish or affect an interest in property" under
Rule 803(14), and the statements contained in these documents qualify as "statements in
documents that affect an interest in property" under Rule 803(15).  The Court therefore grants
the motion to admit ACRIS records assuming that the government can demonstrate their
authenticity.

**III.  Admission of contracts and other agreements as "verbal acts"**

The government seeks to introduce into evidence "contracts including agreements for the
purchase and sale of properties that were part of the Short Sale Scheme and related agreements
among the conspirators and related entities, even if the sales were not ultimately conducted
according to the terms of the agreements."  (Gov't Mot. 14.)  The government states that it does
not intend to offer these contracts and agreements for their truth, but rather for their legal
consequences.  (*Id.* at 14–15.)  The government argues that as "verbal acts that give rise to legal
consequences," these contracts and agreements are not hearsay under Rule 801(c), and are
therefore admissible.  (*Id.* at 15.)

Dafna does not oppose the admission of contracts or other agreements, but clarifies that
he must be "equally entitled to admit contracts and other agreements as nonverbal acts," and that
he "reserves the right to dispute the authenticity of any signature purporting to be his own
signature even if offered as a non-hearsay 'verbal act.'"  (Dafna Opp'n 13.)

Tarshish responds that while he has no objection to the admission of contracts or other
agreements as "verbal acts," he requests that the Court reserve decision on their admission "until

19

the defendants are given the opportunity to review the government's exhibit list to ensure that the documents meet the requirements for admissibility." (Tarshish Opp'n 22.)

The parties agree that contracts submitted as "verbal acts," rather than for their truth, are excluded from the hearsay rule under Rule 801(c), and the Court accordingly grants the government's motion to the extent that it anticipates receiving objections to the contracts' admission as hearsay. Defendants will still be permitted to bring other good faith objections to the admission of the contracts based on, for example, their authenticity or admission for an impermissible purpose. *See, e.g.*, *United States v. Sterritt*, No. 21-CR-193, 2023 WL 7386660, at *4 (E.D.N.Y. Nov. 8, 2023) ("[B]ecause admissibility of this type of evidence turns on characteristics of the particular items of evidence and the purpose for which it is offered, a ruling on admissibility absent specification from the government as to exactly which contracts it seeks to admit, would have been premature." (internal quotation marks and alterations omitted)); *United States v. Ray*, No. 20-CR-110, 2022 WL 558146, at *4 (S.D.N.Y. Feb. 24, 2022) (noting that "the defense is entitled to object [to a government's motion in limine] if it has a good faith basis and the [c]ourt will not admit all of the evidence *en masse* unless there is consent by the defense").

The Court therefore grants the government's motion to admit contracts and other agreements not for their truth, but as "verbal acts" to show their existence and legal consequences.

## IV. Evidence or arguments concerning Defendants' personal, health, or family circumstances

Defendants have not sought to introduce any evidence concerning personal, health, or family circumstances, but the government argues that the Court should preclude such evidence

because it would not go to any material fact and may create "undue sympathy" towards
defendants.  (Gov't Mot. 15–16.)

Tarshish and Dafna respond that although they do not intend to use such evidence to
garner sympathy, they may seek to introduce evidence that implicates personal, health, or family
circumstances if it becomes relevant for permissible purposes such as impeachment or to bolster
witness credibility.  (Dafna Opp'n 13; Tarshish Opp'n 23.)  Tarshish further argues that the
government raises this issue prematurely, as Defendants have not sought to introduce any
evidence concerning personal circumstances, and that the Court should therefore reserve
judgment until trial.  (Tarshish Opp'n 23.)

District courts generally have "wide discretion concerning the admissibility of
background evidence," including evidence of a defendant's personal characteristics.  *See United
States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988); *see also Tardif v. City of New York*, 991 F.3d
394, 409 (2d Cir. 2021) ("Background evidence may provide necessary context to a witness's
substantive testimony, but district courts have 'wide discretion concerning the admissibility of
background evidence.'" (quoting *Blackwell*, 853 F.2d at 88)).  Basic background information,
such as "education and employment," are routinely admitted, *Blackwell*, 853 F.2d at 88, but a
defendant's personal characteristics and circumstances are otherwise usually irrelevant to the
issue of guilt or innocence under FRE 401, or any relevance of such evidence is outweighed by
the risk of prejudice under FRE 403, and such evidence is therefore generally excluded, *see, e.g.*,
*Tardif*, 991 F.3d at 409 (concluding the district court did not abuse its discretion in excluding
testimony related to the defendant's adoption of two refugee children, her own adoption as a
child, and her work as a sign language interpreter for children, particularly where other testimony
had been permitted to establish her "social justice commitment" to rebut the government's

21

assertion that she had brought the law suit for financial reasons); *United States v. DeJesus*, 160 F. App'x 15, 17–18 (2d Cir. 2005) (affirming the exclusion of evidence of witnesses' religious beliefs under FRE 403); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (finding no abuse of discretion where district court precluded "evidence that [defendant's] then-teenage son had been born with cerebral palsy and that [defendant] had devoted his life to caring for the son," reasoning that such evidence "had no bearing on his honesty or integrity and . . . could well cause the jury to be influenced by sympathies having no bearing on the merits of the case"); *Sterritt*, 2023 WL 7386660, at *5 (excluding evidence of defendant's "personal, health, or family circumstances" because it "carrie[d] too great a risk of unfair prejudice, confusing the issues and misleading the jury"); *United States v. Washington*, No. 21-CR-603, 2023 WL 6219203, at *10 (S.D.N.Y. Sept. 22, 2023) (precluding evidence of "family background, health, age, or any other similar factors" because "[s]uch evidence is generally irrelevant to any issue of consequence"); *United States v. Mejia*, No. 16-CR-45, 2016 WL 6662265, at *2 (S.D.N.Y. Nov. 10, 2016) (precluding evidence concerning defendant's and family's health and finances as "the statements regarding the [d]efendant's health and finances [we]re irrelevant to the merits of this case and provide no context to the admissible statements").

Where defendants identify and seek to introduce specific background information, courts generally exclude that evidence unless the defendant offers some permissible purpose. *See, e.g.*, *United States v. Rossy*, No. 22-CR-550, 2023 WL 8237055, at *1 (S.D.N.Y. Nov. 28, 2023) (denying defendant's motion to introduce evidence of her "marital status, age, number of children and ages of said children" because it had "no relation to whether she [wa]s guilty"). In cases where the government seeks a broad order precluding personal circumstances generally, courts have generally granted the government's motion but have clarified that evidence

implicating personal, health, or family circumstances may be admitted if the defendant later offers some legitimate purpose.  *See, e.g.*, *Sterritt*, 2023 WL 7386660, at *5 (granting government's motion "to preclude evidence of [defendant's] health, family, or personal circumstances" but "[w]ith the exception of testimony and evidence related to [defendant's ex-wife's] participation in the alleged offenses"); *Washington*, 2023 WL 6219203, at *10 (granting government's motion "to preclude evidence related to the [d]efendants' background information . . . without prejudice to the [d]efendants making a showing that the evidence they seek to introduce is relevant and probative"); *United States v. King*, No. 21-CR-255, 2023 WL 3949122, at *6 (S.D.N.Y. June 12, 2023) (granting government's similarly broad motion in limine but noting that the court "may reconsider this instant ruling in the event that [d]efendant identifies a basis to include particular evidence or arguments that implicates these personal circumstances").

Accordingly, the Court grants the government's motion to preclude evidence implicating Defendants' personal, health, and family circumstances, but does so without prejudice to Defendants.  The Court may reconsider this ruling if Defendants identify a legitimate basis to introduce specific evidence that happens to implicate personal circumstances.

## V.    Selective prosecution arguments

The government seeks to preclude Defendants from introducing any evidence of or argument regarding the government's "motives and charging decisions," and from "making reference to the fact that certain homeowners, employees of certain of the defendants or other participants in the Short Sale Scheme have not been charged in an effort to suggest that the defendants were inappropriately targeted by the government."  (Gov't Mot. 16.)  The government contends that such selective prosecution arguments are "in reality, thinly-veiled nullification arguments to the jury."  (*Id.*)

Dafna states that he does not intend to make a selective prosecution argument.  (Dafna Opp'n 14.)  Tarshish similarly states that he does not intend to argue selective prosecution, but contends that "the government's request goes too far."  (Tarshish Opp'n 23.)  Specifically, he asserts that "there are many valid reasons for the defense to introduce evidence or arguments related to whether certain individuals were charged with a crime, including: challenging the reliability of the government's investigation, for impeachment purposes, and to elicit bias."  (*Id.*)

"[A] selective prosecution defense alleges a defect in the institution of the prosecution" and "is an issue for the court rather than the jury."  *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks omitted); *see also United States v. Malka*, 602 F. Supp. 3d 510, 543–44 (S.D.N.Y. 2022) (quoting *Farhane*, 634 F.3d at 167, for the same); *Farhane*, 634 F.3d at 166–67 (affirming district court's decision to preclude defendant from arguing to jury that the government targeted him based on his religion); *United States v. Loera*, No. 09-CR-466, 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) (precluding defense arguments to jury that government's motives were improper).

The Court accordingly grants the government's motion to preclude arguments concerning any allegedly improper motives the government may have had.  The Court may, however, allow arguments challenging the reliability of the investigation or evidence of who was prosecuted for the purpose of impeachment.  The government does not appear to oppose such admission in its reply.

## VI.  Evidence or argument that Defendants relied on advice of counsel

The government seeks to preclude Defendants from arguing to the jury that they relied on the advice of counsel in effectuating the Short Sale Scheme, or that they "participated in the Short Sale Scheme in good faith" based on attorney advice.  (Gov't Mot. 17.)  The government

24

argues that Defendants have not met any of the requirements to warrant a jury instruction regarding advice of counsel, and that they should therefore be precluded from mentioning or relying on the presence of lawyers during the transactions underlying the charged offenses.  (*Id.* at 17–18.)  It argues that by suggesting that they "acted in good faith belief that [their] conduct was not unlawful" because of the presence of lawyers, Defendants make "impermissible attempts to gain the benefit of an advice-of-counsel defense without meeting the showing required to formally offer such a defense."  (Gov't Reply 8.)

Dafna states that he does not intend to rely on an advice-of-counsel defense to the charged Short Sale Scheme, but asks that he be permitted to argue "that he did not have the *mens rea* to commit the charged crimes because he acted in the good faith belief that his conduct was not unlawful."  (Dafna Opp'n 14.)

Tarshish similarly notes that although he does not expect to present an advice-of-counsel defense, "evidence that attorneys were involved in the transactions at issue is directly relevant to [his] good faith and lack of criminal intent, even if not introduced as part of a formal advice of counsel defense."  (Tarshish Opp'n 24.)

Typically, an advice-of-counsel defense requires a showing that the defendant "made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith."  *Markowski v. SEC*, 34 F.3d 99, 104–05 (2d Cir. 1994) (citing *SEC v. Savoy Indus., Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir. 1981)).  Defendants have disclaimed any advice-of-counsel defense.

Instead, Defendants seek to introduce evidence concerning the presence and involvement of attorneys.  As discussed at the pretrial conference, it is unclear what evidence Defendants seek to admit and whether that evidence is admissible under Rules 401 and 403, which allow

admission of relevant evidence unless "its probative value is substantially outweighed by a danger of," *inter alia*, "unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; *see also United States v. Bankman-Fried*, No. 22-CR-673, 2024 WL 477043, at *2–3 (S.D.N.Y. Feb. 7, 2024) (taking this approach); *SEC v. Lek Sec. Corp.*, No. 17-CV-1789, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) (same). "Applying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008); *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 151 (2d Cir. 2010) ("[D]istrict courts must engage in a 'fact-intensive, context-specific inquiry' to determine whether to exclude . . . evidence under Rule 403." (quoting *Sprint*, 552 U.S. at 388)).

Accordingly, because the Court lacks details regarding the specific evidence that Defendants wish to introduce concerning the presence of lawyers, the Court cannot rule on the admissibility of such evidence given the "fact-intensive" and "context-specific" inquiry required. The Court therefore defers ruling on the admission of such evidence until presented with specific details as to what evidence Defendants wish to introduce. The parties shall agree to a schedule to provide additional briefing on this issue.

### VII. "Blame the victim" defense

The government argues that the Court should preclude Defendants from raising a "blame the victim" defense. (Gov't Mot. 18–19.) The government argues that it anticipates Defendants may seek to argue that the mortgage lenders effectively knew or should have known of the scheme and yet completed a short sale, and requests that any defense of this sort, or that officials at mortgage lenders were or should have been on notice of Defendants' criminal conduct, be precluded as irrelevant. (*Id.* at 18.)

Tarshish states that he does not intend to raise a "blame the victim" defense, but argues that he should be permitted to admit evidence on the actions, practices, and procedures of the lenders for other purposes, such as to show that Tarshish acted in good faith, or to demonstrate the materiality or lack thereof of any misstatement.  (Tarshish Opp'n 21–22.)  He therefore requests that the Court deny the government's request at this time because the government has not established that the evidence is clearly inadmissible on all grounds.  (*Id.* at 22.)

Dafna asserts that he also does not intend to raise a "blame the victim" defense or to argue that lenders were "on notice" of the charged short sale fraud or were "negligent" or "foolish" for becoming its victims.  (Dafna Opp'n 15.)

Victim negligence or gullibility is not a defense to fraud.  *See, e.g.*, *United States v. Kaufman*, 617 F. App'x 50, 52 (2d Cir. 2015) (holding that a jury instruction that victim negligence, carelessness, or gullibility is no defense to fraud was properly given); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (holding, in a mail fraud case, that "the victim's gullibility . . . is not relevant to the inquiry as to whether the defendants were properly convicted" (omission in original) (quoting *United States v. Thomas*, 377 F.3d 232, 242–43 (2d Cir. 2004))).

Defendants do not appear to contest the government's request to preclude them from raising a "blame the victim" defense.  (Tarshish Opp'n 21–22; Dafna Opp'n 15.)  In addition, the government does not appear to contest Tarshish's requested qualification that he be permitted to admit evidence relevant to an argument that he acted in good faith, or that he be permitted to demonstrate the materiality of any misstatement.  (Gov't Reply 18.)  The Court therefore grants the government's motion and precludes Defendants from raising a "blame the victim" defense, but does not preclude evidence offered for the purpose of proving or disproving the elements of

27

the charges.  *See, e.g.*, *Kurland*, 2022 WL 2669897, at *12 (precluding a "blame the victim"

defense, but permitting the defendant to admit evidence related to the materiality of the

concealed facts and his potential good faith).

**VIII.  Evidence or argument concerning collateral consequences**

      The government argues that the Court should preclude evidence regarding the collateral

consequences of a conviction, including immigration consequences such as possible deportation

to Israel for Dafna and Tarshish and the nature of Defendants' charges being felonies.  (Gov't

Mot. 19–20.)  The government argues that the evidence should be precluded because it is not

relevant to the question of Defendants' guilt or innocence and invites the jurors to ponder matters

that are not within the province of the jury.  (*Id.*)  The government also argues, however, that if

any of Defendants testify, the government should be permitted to cross-examine them about the

potential consequences of conviction each faces because it would be relevant to their credibility

as a witness.  (*Id.* at 20 n.5.)

      Tarshish states that he does not currently intend to offer any evidence of punishment or

collateral consequences, but argues that it is conceivable that such topics could arise at trial

related to a witness's bias against Tarshish.  (Tarshish Opp'n 24.)  Tarshish also argues that

although he does not intend to present improper "appeals to emotion" based on his Israeli

heritage, evidence relating to his country of origin and citizenship status could be admissible for

other purposes, such as to show antisemitic or anti-immigrant biases in witnesses, and asks that

the Court include *voir dire* questions aimed to elicit any biases held by potential jurors against

Israelis, Jewish individuals, or noncitizens.  (*Id.* at 24–25.)  Dafna makes no arguments as to this

issue.  (*See* Dafna Opp'n.)

The Supreme Court has held that "[i]nformation regarding the consequences of a verdict is . . . irrelevant to the jury's task." *Shannon v. United States*, 512 U.S. 573, 579 (1994); *see also United States v. Watts*, 934 F. Supp. 2d 451, 464 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion . . . would result." (citing *Shannon*, 512 U.S. at 579)).

Defendants do not appear to oppose the government's motion to preclude evidence regarding collateral consequences, or the government's motion to question them on potential collateral consequences should they testify. (Tarshish Opp'n 24–25.) Tarshish seeks only to be permitted, if necessary, to introduce evidence as to his Israeli heritage and citizenship status, which the government does not appear to oppose in its Reply. (Gov't Reply 18.) The Court therefore grants the government's motion to preclude evidence regarding collateral consequences of Defendants' convictions.

## IX. Evidence regarding Defendants' lack of criminal records or specific instances of good conduct

The government requests that the Court preclude Defendants from informing the jury of their lack of felony criminal history, unless and until they choose to testify. (Gov't Mot. 20–21.) The government also requests that Defendants' counsel be precluded from advising the jury of Defendants' lack of criminal history in opening statements, through cross examination, or otherwise, in accordance with Second Circuit case law. (*Id.*)

Tarshish does not appear to contest this, and states only that he "has no doubt that the Court will follow the procedures required by the prevailing law of the Circuit and the Federal Rules of Evidence." (Tarshish Opp'n 25.) Dafna makes no arguments as to this issue. (*See* Dafna Opp'n.)

29

Rule 405 generally permits witnesses to provide specific instances of good conduct only when "a person's character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). A defendant testifying on his own behalf, however, is permitted to raise his own lack of a criminal record to bolster his credibility. *Blackwell*, 853 F.2d at 88 (concluding the district court erred where it precluded the defendant from testifying as to his lack of prior convictions); *United States v. Ramsey*, No. 21-CR-495, 2023 WL 2523193, at *5 (E.D.N.Y. Mar. 15, 2023) ("A testifying witness may testify as to her own lack of criminal record, because this information has some relevance to her credibility." (citing *Blackwell*, 853 F.2d at 87–88)).

Defendants do not contest the preclusion of their lack of prior criminal record unless they testify in their defense. The Court therefore grants the government's motion to preclude this evidence unless raised by Defendants during their own testimony.

### X.  Admission of coconspirator statements

The government argues that the Court should allow it to offer evidence of statements made by coconspirators, including statements made by (1) homeowners who received undisclosed payments from Defendants as part of the Short Sale Scheme, (2) employees of Defendants' companies who participated in the Short Sale Scheme, and (3) investors who purchased properties "flipped" by Defendants as part of the Short Sale Scheme. (Gov't Mot. 21–23.) The government asserts, however, that it "does not ask the Court to rule on the admissibility of any particular emails or other out-of-court statements by co-conspirators that the government intends to offer at this time, but merely provides notice of the types of co-conspirator statements the government will seek to introduce at trial" and asks the Court to admit the statements at the proper time. (*Id.* at 24.) The government also asserts that the Court should reject Tarshish's

request for a pretrial hearing on the admissibility of the statements because generally, a court allows for the admission of such statements on a conditional basis, and if, at the end of trial, the government does not succeed in persuading the Court that the conditionally admitted statements were made during and in furtherance of a conspiracy, it should instruct the jury to disregard the statements.  (Gov't Reply 12–13.)  Finally, the government also argues that a proffer of additional facts is not necessary for the conditional admission of coconspirator statements subject to connection.  (*Id.* at 14–15.)

      Tarshish argues that the government has not provided any of the necessary information to evaluate whether such statements are admissible, namely (1) the identity of the declarant, (2) the statement made, (3) the conspiracy during the course of which the statement was made, or (4) which Defendant was also a member of the conspiracy.  (Tarshish Opp'n 17.)  Tarshish argues that without identifying this information, the Court cannot evaluate whether the government will be able to proffer sufficient evidence at trial to establish that the statements meet the criteria for admission of statements in furtherance of a conspiracy.  (*Id.*)  Tarshish also argues that regardless, many of the government's proposed coconspirator statements are likely inadmissible under Rule 801(d)(2)(E) because the government has not proffered any evidence sufficient to show that the homeowners, employees, contractors, or investors who purchased properties from Defendants knew any of their actions were unlawful or joined a conspiracy.  (*Id.* at 18–19.)  Tarshish therefore requests that the Court conduct a hearing pursuant to Rule 104 of the Federal Rules of Evidence to determine the admissibility of evidence the government will seek to admit as statements of coconspirators.  (*Id.* at 19.)  Tarshish argues that although this departs from the procedure typically followed in the Second Circuit, the "vast universe" of possible coconspirator statements in this case makes it "particularly appropriate" for such a

proceeding.  (*Id.* at 20.)  In the alternative, Tarshish requests that the Court instead require the government to "elicit and place before the jury all the evidence it will rely upon to satisfy all prerequisites of admissibility, including the 'in furtherance' requirement" before admitting coconspirator statements.  (*Id.* at 21 (quoting *United States v. Saneaux*, 365 F. Supp. 2d 493, 503–04 (S.D.N.Y. 2005)).)

Dafna states that he does not yet possess the statements the government seeks to introduce, and is concerned that the government will lack the requisite evidence of Dafna's membership in any conspiracy with a homeowner, employee, or investor.  (Dafna Opp'n 15–16.)  Dafna points in particular to the MIP conspiracy, which he asserts was operated by Aronov and to which Dafna had no connection.  (*Id.* at 16.)

Rule 801(d)(2)(E) provides that a statement is not hearsay and is therefore admissible where it is "offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy."  *See also United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014) (same).  To admit a statement under this Rule, "the [C]ourt must find (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy."  *Id.* at 123 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990), *cert. denied*, 501 U.S. 1233 (1991)).  "In determining the existence and membership of the alleged conspiracy, the [C]ourt must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself."  *Id.*  "While idle chatter between co-conspirators does not further a conspiracy, . . . '[s]tatements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy, further the ends of [a] conspiracy.'"  *Id.*

at 124 (quoting *United States v. Simmons*, 923 F.2d 943, 945 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)).  "A finding as to whether or not a proffered statement was made in furtherance of the conspiracy should be supported by a preponderance of the evidence[.]"  *Id.* (quoting *United States v. Thai*, 29 F.3d 785, 814 (2d Cir.), *cert. denied*, 513 U.S. 977 (1994)).  "Furthermore, the government may seek to introduce statements in furtherance of an uncharged conspiracy so long as the conspiracy is 'factually intertwined' with the offense being charged."  *United States v. Abouhalima*, 201 F.3d 432, 1999 WL 1295846, at *2 (2d Cir. 1999) (unpublished table decision); *see also United States v. Plaza*, 826 F. App'x 60, 64 n.3 (2d Cir. 2020) (concluding that statements were admissible "as statements in furtherance of an uncharged conspiracy" (citing *Maldonado-Rivera*, 922 F.2d at 961–62)).

A court may admit coconspirator statements on a conditional basis where it concludes that a proffer is sufficient "subject to connection" at trial and review of the trial evidence.  *United States v. Vidal*, No. 22-2857, 2024 WL 397630, at *4 (2d Cir. Feb. 2, 2024) (first citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969); and then citing *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993)); *see also Geaney*, 417 F.2d at 1120 ("While the practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection,' the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.").  If the government fails to establish participation in the conspiracy at trial by a preponderance of the evidence, the Court must instruct the jury to disregard the hearsay, or even declare a mistrial if necessary.  *See Geaney*, 417 F.2d at 1120 (noting that if the government proved participation in the conspiracy, "the utterances go to the jury for them to consider along with all the other evidence in

33

determining whether they are convinced of defendant's guilt beyond a reasonable doubt.  If it has

not, the judge must instruct the jury to disregard the hearsay or, when this was so large a

proportion of the proof as to render a cautionary instruction of doubtful utility, as could well

have been the case here, declare a mistrial if the defendant asks for it").  Courts in this Circuit

appear to have almost universally followed this approach, rather than holding pretrial Rule 104

hearings — often called *James* hearings — on the issue.  *See, e.g.*, *United States v. Freedman*,

No. 18-CR-217, 2019 WL 5387866, at *2 (S.D.N.Y. Oct. 22, 2019); *United States v. Rowland*,

No. 14-CR-79, 2014 WL 3908115, at *2 (D. Conn. Aug. 11, 2014) ("The so-called '*James*

hearing' approach that Defendant requests has been rejected by the Second Circuit in *Geaney*

and district courts in the Circuit have almost universally rejected requests for such hearings.").

Defendants have cited no cases in which a court in this Circuit held a Rule 104 hearing

on the issue of coconspirator statements, and note that this would be a departure from the typical

procedure in this Circuit.  (Tarshish Opp'n 20–21.)  Although Tarshish argues that the scope of

the individuals involved and/or implicated in the conspiracies make a Rule 104 hearing

necessary here, courts considering cases with similarly or more complex fact patterns have also

declined to hold a Rule 104 hearing in advance of trial where, as here, the evidence would likely

mirror that at trial.  *See, e.g.*, *Loera*, 2018 WL 2744701, at *6 (concluding that in the case, which

addressed the defendant's involvement in large-scale international drug trafficking conspiracies,

there was "no reason to deviate from [the *Geaney* protocol] where the presentation at the hearing

defendant requests would likely replicate the evidence presented at trial").

Defendants also do not provide sufficient reason why the Court should follow the
procedure used by the Court in *United States v. Saneaux*, 365 F. Supp. 2d 493 (E.D.N.Y. 2005).[4]
Although the government has seemingly not provided the names of each coconspirator and the
statements it intends to offer at trial, it asserts that the alleged coconspirators were
(1) homeowners who participated in the fraud by knowingly accepting payments from
Defendants that were not disclosed to lenders, (2) employees and contractors working at
Defendants' direction who knew about the undisclosed payments to certain homeowners and
brokers and other undisclosed information and were aware Defendants had arranged to sell
properties to third parties regardless, and (3) subsequent purchasers who were aware Defendants
had purchased the relevant properties at short sales.  (Gov't Mot. 23–24.)  The government has
thus asserted that the statements were made by coconspirators to Defendants' scheme, and
whether the asserted statements were definitively made "in furtherance of" the conspiracy is a
connection permitted to be made at trial under the *Geaney* rule.  *See, e.g.*, *Freedman*, 2019 WL
5387866, at *2 (following the *Geaney* procedure and noting that "[w]hether other statements the
[g]overnment seeks to admit were made 'in furtherance' of the conspiracy will likewise depend
on the scope of the conspiracy the [g]overnment proves, in addition to the statements' content
and context").

The Court therefore denies Defendants' request for a Rule 104 hearing, and will allow the
admission of the statements of coconspirators subject to connection at trial and review of the trial

---

[4]  In *Saneaux*, the Court followed the *Geaney* protocol, but because it had serious doubts
as to the government's ability to prove that the proffered statements were made "in furtherance
of" the conspiracy, it instructed the government to "elicit and place before the jury all the
evidence it w[ould] rely upon to satisfy all prerequisites of admissibility, including the 'in
furtherance' requirement, so that [the court could] hear counsel argue the issue and rule upon the
admissibility of the recorded . . . declarations before those declarations [were] placed before the
jury."  365 F. Supp. 2d at 504.

evidence.  The Court will review proposed witnesses with the parties each day of trial to confirm

that the necessary prerequisites are met in advance of the statements being offered to the jury.

**XI.  Admission of HUD employee testimony as lay witness testimony**

The government argues that the Court should permit it to elicit testimony from an

employee of the U.S. Department of Housing and Urban Development ("HUD").  (Gov't Suppl.

Mot. 1.)  The government argues that the witness is a lay witness, and that he therefore does not

need to follow the procedures required for expert witnesses.  (*Id.* at 1–2.)  The government

asserts that the witness's testimony will be within the personal knowledge of the witness based

on his employment with HUD, and will not be based on any scientific, technical, or other

specialized knowledge.  (*Id.* at 2.)  In particular, the government asserts that the proffered

testimony will ask the witness to (1) "explain his employer's policies and procedures for

approving short sales, based on knowledge he obtained by working at his employer"; and

(2) explain "how misrepresentations made in connection with particular short sales approved by

the [Federal Housing Authority ("FHA")] affected the decision to approve those short sales,"

which may address "whether specific misrepresentations in short sales approved by [the] FHA

were material."  (*Id.* at 2–3.)

Defendants argue that the witness's proffered testimony is properly characterized as

expert, rather than lay, testimony.  (Defs.' Suppl. Opp'n 2.)  Defendants contend that based on

the government's description, the HUD specialist is not an individual who was involved in the

decision-making process of approving or denying certain short sales based on his own

observations or investigations, but rather is a high-level agency official who will provide his

after-the-fact opinion based only on his knowledge of agency rules and regulations.  (*Id.* at 3.)

Defendants therefore request that the Court require the government to "promptly comply with

the expert disclosure requirements" of Rule 16 of the Federal Rules of Criminal Procedure.  (*Id.* at 4.)

Rule 702 of the Federal Rules of Evidence governs expert witness testimony, and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 701 governs lay witness testimony, and states that lay opinion testimony "is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

"'[L]ay opinion must be the product of reasoning processes familiar to the average person in everyday life,' and . . . an opinion 'rest[ing] in any way upon scientific, technical, or other specialized knowledge' can only be admitted as expert testimony."  *United States v. Felder*, 993 F.3d 57, 73 (2d Cir. 2021) (second alteration in original) (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)).  To the extent witness testimony is "grounded in" a witness's experience as an employee and specific actions or investigations he undertook in his role, it is admissible under Rule 701 "because it [is] based on his perceptions."  *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (emphasis omitted); *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) ("A witness's specialized knowledge, or the

fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise[.]'" (quoting *Bank of China*, 359 F.3d at 181)).  To the extent a witness's testimony "reflect[s] specialized knowledge he has because of his extensive experience," however, that testimony is expert testimony.  *Bank of China*, 359 F.3d at 182.  Thus, "[w]hether a witness is testifying as an expert or non-expert depends on whether his testimony is based on personal perceptions of the matters in issue on the one hand or his specialized knowledge of issues relevant to the case on the other."  *United States v. James*, 607 F. Supp. 3d 246, 259 (E.D.N.Y. 2022) (quoting *United States v. Johnson*, No. 16-CR-457, 2017 WL 11490479, at *2 (E.D.N.Y. Aug. 4, 2017)).  "When the issue for the fact-finder's determination is reduced to impact — whether a witness would have acted differently if he had been aware of additional information — the witness so testifying is engaged in 'a process of reasoning familiar in everyday life.'"  *United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendment).

Although the government attempted to clarify at the pretrial conference what evidence it plans to present through the testimony of this witness, it is still unclear.  To the extent the HUD witness is testifying as to the policies and procedures of his employer, and therefore to knowledge gained from his experience as an employee, that testimony would be permissible lay witness testimony.  The witness also is permitted to testify as to how misrepresentations made in connection with particular short sales approved by the FHA affected the decision to approve those short sales, to the extent the testimony is "based only on [his] experiences with matters pertinent to this case."  *Cuti*, 720 F.3d at 460 (concluding that hypothetical questions, posed to an individual who had performed a previous audit for defendants, that asked him how his audit

would have changed if he had known about the misrepresentations was permissible lay opinion testimony because it addressed only "whether [the] witness would have acted differently if he had been aware of additional information"); *see also Rigas*, 490 F.3d at 224 (concluding that the witness had offered lay opinion testimony where his testimony was "based upon his observations during his" tenure as an employee of the relevant company, he was responsible for correcting the company's financial statements, he was "well-acquainted with the records," and the presumptions of the hypotheticals posed to him were based on evidence and testimony already in the record).

To the extent the government seeks to elicit testimony regarding specific misrepresentations and short sales in which the witness was not involved, however, that testimony would be permissible only as expert opinion testimony, because it would call for the witness to draw on his experience generally, rather than on his own "personal perception" of the matter at issue. *See, e.g.*, *James*, 607 F. Supp. 3d at 259 (concluding the proposed testimony was not lay testimony because it would, "to an extent, call for the respective witnesses to draw upon their collective experiences as medical billers and coders, or opine whether [d]efendant's billing and/or billing practices were 'appropriate' or 'correct'").

As discussed at the pretrial conference, the parties will further brief this issue after the government provides notice to Defendants as to the witness's expected testimony.

**XII.  Tarshish's motion to inspect the grand jury minutes**

Tarshish in his opposition renews his request to inspect the grand jury minutes.  (Tarshish Opp'n 20 n.11.)  Tarshish argues that the Indictment purports to identify five individuals who subsequently purchased properties, but that the government's bill of particulars identified only two.  (*Id.*)  Tarshish therefore requests to inspect the grand jury minutes "to determine whether the grand jury was misled to believe there was an identified individual . . . who purchased the

39

short sale property in a flip, when in fact the government lacked any proof" of the identity of a

subsequent purchaser or whether there was even a subsequent purchase.  (*Id.*)

The government argues that the Court should reject this request because Tarshish alleges

no specific government misconduct and offers no explanation of how the identities of the

subsequent purchasers relate to the validity of the Indictment.  (Gov't Reply 16–17.)

A district court may authorize the disclosure of grand jury minutes to a defendant where

he "shows that a ground may exist to dismiss the indictment because of a matter that occurred

before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  However, "[g]rand jury proceedings are

presumptively secret, and a defendant seeking the disclosure of grand jury materials bears a

heavy burden."  *United States v. Schlegel*, 687 F. App'x 26, 30 (2d Cir. 2017) (citing *In re

Petition of Craig*, 131 F.3d 99, 104 (2d Cir. 1997)).  "While the interests in grand jury secrecy

are less compelling when the grand jury's activities have terminated, a 'showing of particularized

need' is nonetheless required to justify disclosure of grand jury materials."  *Id.* (quoting *United

States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980)); *see also United States v. Calk*, 87 F.4th

164, 186 (2d Cir. 2023) ("[T]o overcome the presumption of regularity that attaches to a grand

jury proceeding, the defendant, who bears the burden of persuasion, 'must present particularized

proof of an improper purpose.'" (quoting *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013))).

"To prove a particularized need, parties seeking disclosure must show that the 'material they

seek is needed to avoid a possible injustice in another judicial proceeding, that the need for

disclosure is greater than the need for continued secrecy, and that their request is structured to

cover only material so needed.'"  *United States v. Ulbricht*, 858 F.3d 71, 107 (2d Cir. 2017)

(quoting *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996)), *abrogated on other

grounds by Carpenter v. United States*, 585 U.S. 296 (2018).  Further, a "review of grand jury

40

minutes should not be permitted without concrete allegations of [g]overnment misconduct."
*Schlegel*, 687 F. App'x at 30 (quoting *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994));
*United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (stating that a defendant must make
"specific factual allegations of government misconduct" in order to inspect grand jury minutes),
*abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010).  This
standard applies equally to a defendant's request for the Court to conduct *in camera* review of
the minutes.  *See United States v. Smith*, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015); *United
States v. Laster*, No. 06-CR-1064, 2007 WL 3070599, at *1–3 (S.D.N.Y. Oct. 19, 2007), *aff'd*,
313 F. App'x 369 (2d Cir. 2009).

Tarshish has not alleged government misconduct or a "particularized need" that would
support an inspection of the grand jury minutes.  Tarshish does not contest that the government
has identified and provided the identities of three of the five specified "Subsequent Purchasers"
in the Indictment.  (*See* Tarshish Opp'n 20 n.11; Tarshish Mot.)  The Subsequent Purchasers
listed in the Indictment were used to support the details regarding certain of the select
transactions executed as part of the Short Sale Scheme, and thus Tarshish has not indicated how
a lack of two out of three of the Subsequent Purchasers listed in the Indictment would have led to
the grand jury not indicting Defendants or would have established misconduct.

The Court therefore denies Tarshish's renewed motion to inspect the grand jury minutes.

**XIII. Tarshish's motion for clarification and supplementation of government's bill of
particulars**

Tarshish also separately requests that the Court direct the government to provide an
updated Bill of Particulars that identifies (1) "which homeowners the government will allege at
trial are co-conspirators," (2) Subsequent Purchasers 1, 3, and 4, referred to as such in the
Indictment, (3) which subsequent purchasers or investors the government will allege at trial are

41

coconspirators, (4) any additional known unindicted coconspirators of which the government is aware, and (5) identify all coconspirators whose statements the government plans to offer at trial under Rule 801(d)(2)(E).  (Tarshish Mot. 4)  Tarshish argues that the government failed to comply with the Court's May 6, 2021 Order directing the government to file a Bill of Particulars that provided the identity of known unindicted coconspirators.  (*Id.* at 2.)

The government argues that it has identified Subsequent Purchaser 1, and that Subsequent Purchasers 3 and 4 are not known unindicted coconspirators.  (Gov't Opp'n 2.)  As for the homeowner coconspirators, the government argues that Defendants will not be surprised as to the information included in the government's case, because the government provided Defendants with the list of the properties it may focus on at trial, the two dozen identified short-sale coconspirators, and two homeowners whose names were provided to Defendants, and because the government made the bulk of its section 3500 disclosures on July 5, 2024.  (*Id.* at 3.) The government also argues that each homeowner's knowledge and intent is a case-specific determination that goes to whether they are coconspirators, but that the bulk of the out-of-court statements the government seeks to introduce are admissible even if not considered coconspirator statements, and the government has already provided Defendants with the names of the two homeowners whose out-of-court statements the government may seek to introduce as coconspirator statements.  (*Id.* at 4.)  The government also argues that the Court should not order the government to disclose its trial theories or proof, and therefore should not require it to disclose the identities of coconspirators beyond the homeowners whose statements the government plans to offer under Rule 801(d)(2)(E).  (*Id.* at 4–5.)

Federal district courts have authority to "direct the government to file a bill of particulars."  Fed. R. Crim. P. 7(f).  "A bill of particulars is required 'only where the charges of

the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Chen*, 378 F.3d 151, 163 (2d. Cir. 2004) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). "Moreover, 'a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.'" *Id.* (quoting *Walsh*, 194 F.3d at 47); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam) ("Generally, if the information sought by [the] defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." (first citing *United States v. Matlock*, 675 F.2d 981, 986 (8th Cir. 1982); and then citing *United States v. Soc'y of Indep. Gasoline Marketers*, 624 F.2d 461, 466 (4th Cir. 1979))); *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990) ("The important question is whether the information sought is necessary, not whether it is helpful." (first citing *United States v. Guerrerio*, 670 F. Supp. 1215, 1224 (S.D.N.Y. 1987); and then citing *United States v. Payden*, 613 F. Supp. 800, 816–18 (S.D.N.Y. 1985))). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Schlesinger*, 261 F. App'x 355, 359 (2d Cir. 2008) (quoting *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)). "When exercising this discretion, a court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery, and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Burstein*, No. 10-CR-623, 2012 WL 12929661, at *4 (E.D.N.Y. June 14, 2012) (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001)), *aff'd sub nom. United States v. Rabinowitz*, 645 F. App'x 63 (2d Cir. 2016).

Where an indictment charges an alleged conspiracy, the government is not required to specify each overt act taken in furtherance of the conspiracy. *United States v. Jain*, No. 19-CR-59, 2019 WL 6888635, at *1 (S.D.N.Y. Dec. 18, 2019) (first citing *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989); and then citing *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993)); *see also Jimenez*, 824 F. Supp. at 363 ("[D]isclosure of all the overt acts in furtherance of the conspiracy is not properly the function of a bill of particulars." (citation omitted)); *Feola*, 651 F. Supp. at 1132 ("It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the [g]overnment intends to adduce to prove their criminal acts." (first citing *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); then citing *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985); and then citing *United States v. Politi*, 334 F. Supp. 1318, 1321 (S.D.N.Y. 1971), *aff'd*, 516 F.2d 897 (2d Cir. 1975) (unpublished table decision))).

In cases alleging conspiracy, the government is not necessarily required to disclose the identity of all coconspirators. *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (first citing *United States v. Gasperini*, No. 16-CR-441, 2017 WL 2399693, at *12 (E.D.N.Y. June 1, 2017); and then citing *United States v. Follieri*, No. 08-CR-850, 2009 WL 529544, at *1 (S.D.N.Y. Mar. 3, 2009)).  Courts in the Second Circuit disagree regarding at what stage of the proceeding the government must identify known unindicted coconspirators. *See United States v. Barrera*, 950 F. Supp. 2d 461, 477 (E.D.N.Y. 2013) ("Courts in this [c]ircuit are divided on the question of when the [g]overnment should be required to identify alleged co-conspirators in a bill of particulars." (first citing *United States v. Urso*, 369 F. Supp. 2d 254, 273 (E.D.N.Y. 2005); and then citing *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y.

2000))); *Nachamie*, 91 F. Supp. 2d at 572 ("A review of the case law in this district reveals no clear distinction among circumstances in which courts grant a request for the names of known unindicted co-conspirators and circumstances in which they do not.").  However, in determining whether to grant a bill of particulars seeking the identity of unindicted coconspirators, the court must weigh the defendant's need for information to adequately prepare a defense against legitimate law enforcement concerns and any risk of compromising an ongoing investigation. *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000) ("[I]f the discovery has been voluminous, identification of known unindicted co-conspirators will help a defendant focus his investigation and prepare for trial.  On the other hand, considering the potential danger to the co-conspirators and the risk of compromising continuing investigations allows a court to balance a defendant's need for the information against legitimate law enforcement concerns." (quoting *Nachamie*, 91 F. Supp. 2d at 573 & n.8)).

In May of 2021, the Court directed the government to provide in its Bill of Particulars "the names of any known unindicted Short Sale Co-Conspirators."  (Mem. & Order 17, Docket Entry No. 181.)  The government represented at the pretrial conference that it has provided all of the names of known unindicted Short Sale coconspirators to Defendants, and that it will continue to provide this information as it becomes aware of additional coconspirators.  The Court therefore denies Defendants' motion.

## XIV.  Preclusion of documents not timely provided

Defendants also requested at the pretrial conference that the Court preclude the government from using documents at trial that were not timely provided in discovery, and specifically referenced documents included in recently subpoenaed loan files.  The government did not oppose this request.  The Court grants Defendants' request and precludes the government

from using any documents from the loan files in its case-in-chief that were not timely disclosed to Defendants in discovery.

**XV. Conclusion**

For the reasons set forth above, the Court granted in part and denied in part the motions.

Dated: July 10, 2024
       Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge